[No. 57685-8.   En Banc.   December 12, 1991.]

THE STATE OF WASHINGTON, *Petitioner*, v. DOLORES G. SAAS, *Respondent*.

38

*Norm Maleng, Prosecuting Attorney,* and *Lynn S. Prunhuber, Senior Deputy,* for petitioner.

*Irene Tanabe* of *Washington Appellate Defender Association,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Jeffrey O.C. Smith, Senior Assistant,* amicus curiae for petitioner.

*Ralph Smith* and *Joseph C. Long* on behalf of North American Securities Administrators Association, amicus curiae for petitioner.

*James E. Dunlap* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondent.

JOHNSON, J. — The State seeks review of the Court of Appeals determination that the respondent's guilty plea lacked a factual basis. Dolores Saas faced nine potential counts of securities fraud when, as part of a plea agreement, she pleaded guilty to one count of securities fraud. Prior to sentencing, she moved to withdraw her guilty plea. The trial court denied this motion. The Court of Appeals reversed. Without the benefit of briefing or argument by any of the parties, the Court of Appeals adopted the test in *Reves v. Ernst & Young,* 494 U.S. 56, 108 L. Ed. 2d 47, 110 S. Ct. 945 (1990) for determining when an instrument constitutes a "security". The court concluded the notes at issue were not securities under its application of the *Reves* test.

We reverse the Court of Appeals. We hold that when a defendant moves to withdraw a guilty plea prior to sentencing, the defendant must show that a manifest injustice requires withdrawal of the guilty plea. *See* CrR 4.2(f). Saas has not met this burden. We do not analyze whether the *Reves* test should be adopted in the present case, as such an analysis would be extraneous. Our opinion in this case does not foreclose an analysis of *Reves,* however, in an appropriate future case.

Dolores Saas and her husband Charles were both licensed realtors. The Saases became involved in rehabilitating old

buildings for resale at a profit. Charles Saas was a college graduate. Dolores Saas completed high school and had attended college for 2 years.

The Saases first met Doris Hellner in 1981. Hellner was approximately 60 years old, a widow, and had a grade school education. In 1981, Hellner inherited a friend's estate.

Through a series of falsehoods and misrepresentations about their lives, their financial status, and about their property, the Saases gave Hellner the false impression they were very rich. After cultivating Hellner's friendship, the Saases sought to obtain Hellner's money.

From March 1982 to April 1983, the Saases obtained a total of $94,838 from Hellner. The Saases obtained this money through a series of nine separate transactions. In each transaction, the Saases issued Hellner a promissory note in exchange for a sum of money equal to the face value of the note. The dates and amounts of money involved in the transactions are as follows:

| | |
|---|---|
| March 30, 1982: | $30,000 |
| April 21, 1982: | 3,838 |
| May 11, 1982: | 7,000 |
| July 7, 1982: | 6,000 |
| August 2, 1982: | 10,000 |
| September 7, 1982: | 10,000 |
| October 26, 1982: | 15,000 |
| November 23, 1982: | 10,000 |
| April 5, 1983: | 3,000 |
| | $94,838   Total |

These notes purported to bear interest at a rate of 18 percent annually. Also, the notes were payable upon the completion and sale of condominium units in which the Saases had some ownership interest. Under the wording of the notes, if the condominiums were never finished and sold, the notes would never come due.

The facts behind the third promissory note are of particular relevance for this case. In this transaction, the Saases

told Hellner they needed money for monthly payments and repair costs on their "Des Moines Court" property, which was tied up in litigation. The Saases told Hellner that when they got their property out of litigation, the Saases would be able to pay back Hellner's entire investment with 1 month's worth of rent receipts. In this transaction, the Saases issued Hellner a promissory note in exchange for $7,000.

When the Saases later got their property back, they did not pay Hellner. Instead, they continued to tell Hellner the property was still tied up in litigation.

The Saases created the false impression Hellner's money would be very secure with them because the Saases were people of enormous wealth with long-term financial resources who were having a temporary cash-flow problem. The Saases filed for Chapter 7 bankruptcy sometime after they executed the last of the nine notes to Hellner.

The State charged the Saases with three counts of securities fraud based on the first three promissory notes. The State was prepared to add more counts based on the remaining six notes.

On May 20, 1987, pursuant to plea negotiations, the Saases both entered *Alford* pleas to one consolidated count of securities fraud based on all nine of the notes executed to Hellner. In her guilty plea form, Dolores Saas stated as follows:

> I wish to plead guilty to one Count of securities fraud to take advantage of the State's dismissal of Counts II & III and agreement not to file additional counts arising out of transactions in the discovery provided. I believe there's a substantial likelihood I'd be found guilty after trial on Count I . . .. The Court may read all three affidavits of probable cause.

At the plea hearing, the Saases were informed of the rights they would be giving up by entering guilty pleas. They were also informed the sentencing judge was not bound by the State's sentencing recommendation, and the court could impose any sentence up to the 10-year maximum. At the end of the hearing, the trial court accepted the Saases' guilty pleas and stated:

> I believe that Mr. Saas and Mrs. Saas are making their plea knowingly, intelligently, and voluntarily. They have been informed of the nature of the charge, and they have been informed of the consequences of their plea, both by counsel and the Court.

Prior to sentencing, the Saases made a motion to withdraw their guilty pleas. The trial court denied this motion.

At the sentencing hearing and pursuant to the plea agreement, the State recommended the Saases both be given a 10-year *deferred* sentence with 4 months to be served in the King County Jail, and that they pay restitution in full to Hellner. The trial court imposed on each of the Saases a 10-year *suspended* sentence, with 4 months in jail and restitution to Hellner.

Dolores Saas is the sole respondent to this appeal. Charles Saas is not a party, as he died shortly after the Court of Appeals issued its opinion in this case.

■ Dolores Saas argues the trial court erred in not allowing her to withdraw her guilty plea prior to sentencing. CrR 4.2(f) provides, in part, that:

> The court shall allow a defendant to withdraw the defendant's plea of guilty *whenever it appears that the withdrawal is necessary to correct a manifest injustice.*

(Italics ours.) Under this rule, a "manifest injustice" is "an injustice that is obvious, directly observable, overt, not obscure." *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974). CrR 4.2(f) imposes a demanding standard on a defendant who seeks to withdraw a guilty plea. *Taylor*, at 596.

The court in *Taylor* provided a list of four nonexclusive instances of "manifest injustice":

> (1) denial of effective counsel, (2) plea . . . not ratified by the defendant or one authorized [by him] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.

*Taylor*, at 597. Saas argues a manifest injustice has occurred both because the plea was not voluntary and because the prosecutor breached the plea agreement.

We first address whether the plea was voluntary. CrR 4.2(d) provides as follows:

> **(d) Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. *The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.*

(Italics ours.) Saas argues her plea was not voluntary because the plea lacked a factual basis.

Under RCW 21.20.010, the crime of securities fraud involves fraud or untruthfulness with respect to the offer or sale of any security.[1] Saas does not dispute a factual basis exists for finding she engaged in fraudulent conduct to obtain Hellner's money. Rather, she contends her plea lacked a factual basis because the notes at issue were not securities.

In determining whether a factual basis exists for a plea, the trial court need not be convinced beyond a reasonable doubt that the defendant is in fact guilty. *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976). Rather, a factual basis exists if there is sufficient evidence for a jury to conclude that the defendant is guilty. *Newton*, at 370.

At a plea hearing, the trial court may consider any reliable source of information in the record for determining whether sufficient evidence exists to support the plea. *State v. Osborne*, 102 Wn.2d 87, 95, 684 P.2d 683 (1984). One source the court may consider is the prosecutor's factual statement. *Osborne*, at 95. In this case, Saas stipulated that the court could consider each of the State's three certifica-

---

[1] The full text of RCW 21.20.010 is as follows:

"It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"(1) To employ any device, scheme, or artifice to defraud;

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

tions for determination of probable cause in determining whether to accept the guilty plea.

The certifications indicate the Saases gave promissory notes to Hellner in exchange for money. Notes are included within the statutory definition of the term "security". *See* RCW 21.20.005(12). A note can be characterized as a "security" where the note involves an investment of money in a common enterprise where the investor expects to reap profits from the efforts of a third party. *State v. Philips*, 108 Wn.2d 627, 632, 741 P.2d 24 (1987).

In the transaction involving the third note, Hellner gave the Saases money with the understanding the money would be used to benefit the Saases' "Des Moines Court" property. Hellner also understood she would be paid from the rent proceeds of this property once the property was freed from litigation. The transaction thus has the character of an investment in a common enterprise. Hellner expected to receive 18 percent interest on her "investment". Her only role in the enterprise was to give the Saases her money. She was in no way involved in seeing that the property eventually produced rental income. Hellner thus expected to reap profits from the efforts of others. As such, the State's certifications reveal sufficient evidence existed to support an argument to the jury on the issue of Saas' guilt. Under CrR 4.2(d), the trial court did not err in finding a factual basis existed for the guilty plea.

Saas next contends her plea was not voluntary under CrR 4.2(d) because she was not informed of all of the consequences of the plea. The record reflects the trial court adequately informed Saas of all the direct consequences of her plea prior to accepting her guilty plea. *See State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980) (a defendant must be informed of all *direct* consequences of his or her plea, but need not be advised of all possible *collateral* consequences). We therefore conclude Saas entered her guilty plea voluntarily.

Saas next alleges a manifest injustice necessitates the withdrawal of her guilty plea because the prosecutor vio-

lated the plea agreement. The record reflects the prosecutor complied with the plea agreement and recommended to the court the 4-month jail term agreed on in the plea agreement. While a community corrections officer recommended Saas be given a 6-month term in jail instead of a 4-month term, the court imposed the 4-month term. Saas has therefore not established she suffered any manifest injustice.

Saas next contends the trial court abused its discretion in imposing a suspended rather than a deferred sentence. A trial court's pre-Sentencing Reform Act of 1981 (SRA) sentencing decisions will be set aside only where the trial court abused its discretion. *State v. Cunningham*, 96 Wn.2d 31, 34, 633 P.2d 886 (1981). A court abuses its discretion when its decision is " ' "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." ' " *Cunningham*, at 34 (quoting *State v. Blight*, 89 Wn.2d 38, 41, 569 P.2d 1129 (1977); *State v. Sponburgh*, 84 Wn.2d 203, 210, 525 P.2d 238 (1974)).

The record reflects the trial court imposed a suspended sentence instead of a deferred sentence in order to achieve consistency between its treatment of defendants whose cases were governed by the SRA and its treatment of those whose cases were governed by the pre-SRA sentencing system. This reasoning is consistent with provisions of the SRA which seek to reduce discrepancies between time served by inmates under the SRA and time served under the pre-SRA indeterminate sentencing system. *See, e.g.*, RCW 9.95.011 (the trial court's decision in setting a defendant's pre-SRA minimum term shall be reasonably consistent with the SRA's purposes, standards and sentencing ranges). The trial court's decision was consistent with an SRA policy concern. As such, the court's decision cannot be characterized as "manifestly unreasonable". The trial court did not abuse its discretion when it imposed a suspended sentence.

Finally, we have reviewed the arguments Saas advances in her pro se brief. None of these arguments supports the proposition that a manifest injustice necessitates the with-

drawal of Saas' guilty plea. Her pro se brief largely contains allegations not relevant to the current proceeding.[2]

We conclude Saas has failed to show under CrR 4.2(f) that a manifest injustice necessitates the withdrawal of her guilty plea. The trial court therefore correctly denied Saas' motion to withdraw her guilty plea. Also, the trial court did not abuse its discretion in imposing a suspended sentence rather than a deferred sentence. We reverse the Court of Appeals and affirm the trial court.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

BRACHTENBACH, J., concurs in the result.

---

[2]Saas' appellate counsel raises in her brief on Saas' behalf a motion to strike the clerk's supplemental papers. RAP 17.4(d) provides: "A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits." Granting this motion would not preclude hearing the case on the merits. The motion is therefore not properly before the court, and is accordingly denied.