IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79708-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | ORDER DENYING MOTION |
| | ) | FOR RECONSIDERATION, |
| MICHAEL PAUL HAXTON, | ) | WITHDRAWING OPINION, |
| | ) | AND SUBSTITUTING |
| Appellant. | ) | OPINION |
| | ) | |

The appellant Michael P. Haxton, filed a motion for reconsideration of the opinion filed on April 15, 2019. The respondent, the State of Washington, has filed a response. The court has determined that said motion should be denied and that the opinion filed on April 15, 2019 shall be withdrawn and a substitute unpublished opinion be filed. Now therefore, it is hereby

ORDERED that the motion for reconsideration is denied; it is further

ORDERED that the opinion filed on April 15, 2019 is withdrawn and a substitute unpublished opinion shall be filed.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79708-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL PAUL HAXTON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: July 1, 2019 |

HAZELRIGG-HERNANDEZ, J. — Michael P. Haxton pled guilty to one count of attempted rape of a child in the second degree. He seeks reversal, arguing that he should have been allowed to withdraw his guilty plea under CrR 4.2(f) because he was affirmatively misinformed of the maximum sentence that he faced at trial by his assigned counsel. In a statement of additional grounds for review, he argues that counsel was ineffective at the hearing on the motion to withdraw because he failed to introduce certain evidence. Because Haxton has not carried his burden to show manifest injustice resulted from the plea and cannot show prejudice from counsel's performance, we affirm.

FACTS

On September 7, 2016, Michael P. Haxton began communicating with a woman who he believed was the mother of three young children ages 6, 11, and 12. He indicated that he was interested in participating in sexual acts with the

children and described specific acts that he planned to carry out. He said that he wanted to meet the children and that he would bring gifts including candy, nail polish, a stuffed animal, and a ball. Haxton came to the address that the woman had told him was her residence and was placed under arrest. He had candy, nail polish, a stuffed animal, and a ball in his car. Haxton was charged with two counts of attempted rape of a child in the first degree and one count of attempted rape of a child in the second degree.

At the change of plea hearing on June 5, 2017, the court asked Haxton if he had gone over the statement of defendant on plea of guilty, prosecutor's statement of criminal history, and offender score sheet with his attorney, Robert Quillian. Haxton responded that he had. The court informed Haxton that the standard sentencing range would be 58.5 months to 76.5 months to life imprisonment and he indicated he understood. He also indicated the he understood that the other two charges would be dismissed if the plea was accepted. The court clarified that the State was recommending a sentence of 60 months to life imprisonment on the remaining count and Haxton indicated that he understood.

Haxton then entered an Alford[1] plea of guilty to count 3, attempted rape of a child in the second degree. The court asked if he was making the plea freely and voluntarily and Haxton responded that he was. The court noted that he had the assistance of counsel and had made a free and voluntary plea of guilty to count 3, then found Haxton guilty as charged. The State then moved to dismiss the other

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

two counts and the court granted the motion. The statement of defendant on plea of guilty to sex offense, which included the standard sentence range of 58.5 to 76.5 months to life for count three and the prosecutor's sentence recommendation of 60 months to life, was signed by Haxton and filed the same day. The prosecutor's statement of criminal history and attached offender score sheet, also signed by Haxton and filed the same day, showed an offender score of 0 and circled the corresponding handwritten sentence range of "58.5–76.5."

On July 17, 2017, Haxton filed a pro se motion to withdraw his plea with no attached briefing. Quillian withdrew as Haxton's counsel on July 31, 2017. His second attorney, A. Christian Cabrera, filed a motion to withdraw the guilty plea and supporting memorandum on October 17, 2017. This motion argued that Haxton should be allowed to withdraw his plea of guilty because it was necessary to correct a manifest injustice. Specifically, Haxton claimed that he had been denied effective assistance of counsel because his first attorney, Quillian, failed to give him adequate legal advice, failed to inform him of the sentence he faced at trial, failed to properly investigate his case, and coerced him into pleading guilty. Therefore, Haxton argued that he did not enter the guilty plea knowingly, voluntarily, and intelligently and he should be permitted to withdraw the plea.

Haxton filed another pro se motion to withdraw the plea on October 25, 2017, on the grounds that he had received ineffective assistance of counsel and the plea was not voluntary because Quillian had subjected him to extreme levels of duress. In an attached handwritten affidavit, Haxton stated that Quillian had miscalculated his offender score and told him that he would be sentenced to 20 to

22 years in prison if he was convicted on all counts. Haxton also alleged that Quillian refused to investigate the "mechanism that was created within the Net Nanny operation that allows officers to systematically frame certain individuals." Haxton alleged that Quillian failed to investigate his reports of "tampering with multiple pieces of evidence in an obvious manner, obvious instances of perjury, and the introduction of fraudulent document [sic] in court." Haxton claimed that Quillian "constantly laughed at [him] for [his] fantasies in practically every meeting [they] ever had," subjected him to a competency evaluation "to intimidate [him] and to damage [his] credibility," and lied to him repeatedly. In a subsequent letter to the court, Haxton alleged that the motion filed by Cabrera was insufficient and did not accurately reflect his arguments as to why the court should permit the plea to be withdrawn. Cabrera was permitted to withdraw as Haxton's counsel after advising the court of a breakdown in communication.

On December 18, 2017, the court held a hearing on the motion at which Haxton was represented by his third attorney, Kevin Griffin. Griffin asked the court to find that a manifest injustice occurred or resulted when Haxton entered a plea of guilty because he had not received effective assistance of counsel and the plea was not made voluntarily. Haxton testified that the prospect of facing over 20 years in prison if he was convicted of all three counts at trial was "a big factor" in his decision to plead guilty. He testified that he would have felt differently about the plea offer if he had known he was actually facing 10 to 13.5 years if convicted of all three counts at trial "because of the fact that it's an indeterminate sentence and that if [he] did not pass the indeterminate sentencing review once with the State's

deal, it would be ten years, which is . . . in the range of the sentence if [he] had gone to trial." He also testified that he did not feel that his plea was voluntary because he felt that he had no other option but to plead guilty. Haxton testified that he had never seen the written plea offer before but he "knew what the plea deal was."

Haxton said that he asked Quillian to hire an investigator to examine a discrepancy between the advertisement in the discovery packet and the one to which he had responded. He felt that this was crucial to his defense strategy. However, Haxton said that Quillian refused to hire an investigator, claiming that there was not time to conduct the investigation before the deadline to accept the plea offer. He testified that Quillian told him that the State could withdraw the plea offer if Haxton asked for substitute counsel.

The trial court denied Haxton's motion to withdraw his guilty plea. The court noted that "[i]t would have been nice to have Mr. Quillian's testimony here today, but the Court was left with only Mr. Haxton." In its verbal ruling, the court noted:

> The Court is skeptical that Mr. Quillian would have missed the range having been provided with the plea offer by the State. I am not prepared to make a finding that he did not. I am not prepared to make a finding whether he did or he didn't make that representation. I think there are reasons to question both the recollection and the motivations of Mr. Haxton in his testimony today but not sufficient to disregard everything Mr. Haxton said. Mr. Haxton has testified about other aspects in a way that does not indicate this is a fabrication, but even without making a finding as to whether Mr. Quillian did or didn't make that representation, the Court concludes that there has been an insufficient showing that Mr. Haxton would not have pled guilty if he had been told 13 years instead of 20. Again, that is based both on the Court's evaluation of Exhibit 2, the testimony from Mr. Haxton, as well as the delta between 13 years and 60 months, all in the context of course of whether or not the bar of manifest injustice has been reached.

The court entered written findings of fact and conclusions of law, including the following:

> 16. The defendant has alleged that Mr. Quillian may have provided him with an incorrect possible sentence range if convicted as originally charged. The court makes no finding that Mr. Quillian did, or did not, provide incorrect information. The court is skeptical that Mr. Quillian would have misrepresented the range given the plea offer documentation he possessed at the time.
>
> 17. Based on the court's observations of the content and demeanor of the defendant while testifying, there are reasons to question his recollection and motivations.
>
> . . .
>
> 19. The gap between the sentence range that the defendant stated Mr. Quillian provided him and the actual sentence range is not large enough to demonstrate that the defendant would not have entered the guilty plea.
>
> 20. There has been an insufficient showing that the defendant would not have entered the guilty plea with the accurate information, assuming, without deciding, that the information was incorrect.

Haxton was sentenced to an indeterminate sentence of 60 months to life imprisonment. He timely appealed.

## DISCUSSION

Haxton contends that the court erred in denying his motion to withdraw his guilty plea because he received ineffective assistance of counsel from Quillian and his plea was not voluntary. In a statement of additional grounds for review, he also contends that he was denied effective assistance of counsel when Griffin failed to introduce certain evidence at the hearing on the motion. Because he cannot show a manifest injustice resulted from his plea of guilty or prejudice from Griffin's performance, we affirm.

I.     Motion to Withdraw Plea of Guilty

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). A defendant who enters a guilty plea waives a number of important constitutional rights in doing so, such as the right to a jury trial, the right to confront accusers, and the privilege against self-incrimination. State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996) (citing Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). A trial court shall not accept a plea of guilty that is not made voluntarily, competently, and with an understanding of the nature of the charge and the consequences of the plea. CrR 4.2(d).

Motions to withdraw a guilty plea are usually reviewed for abuse of discretion. State v. A.N.J., 168 Wn.2d 91, 106, 225 P.3d 956 (2010). However, when the motion is based on ineffective assistance of counsel stemming from claimed constitutional error, we review the denial de novo. Id. at 109; State v. Buckman, 190 Wn.2d 51, 57, 409 P.3d 193 (2018).

Trial courts must allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). "A 'manifest injustice' is 'an injustice that is obvious, directly observable, overt, and not obscure.'" State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting State v. Taylor, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). The Washington Supreme Court has found that a manifest injustice results where a defendant was denied effective counsel, the plea was not ratified by the defendant, the plea was involuntary, or the plea agreement was not kept by the prosecution.

State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183 (1996) (citing Saas, 118 Wn.2d at 42). A defendant who seeks to withdraw a plea of guilty plea bears the burden to meet the "demanding standard" imposed by CrR 4.2(f). Saas, 118 Wn.2d at 42 (citing Taylor, 83 Wn.2d at 596).

A. Voluntariness

Haxton contends that his plea of guilty was invalid because it was based on affirmative misinformation that he received from Quillian about the consequences he faced at trial. A plea is knowing and voluntary only when the defendant understands the consequences of pleading guilty, including possible sentencing consequences. Buckman, 190 Wn.2d at 59. A defendant's signature on a plea statement is strong prima facie evidence of a plea's voluntariness. Branch, 129 Wn.2d at 642, 642 n.2. "When [a] judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." Id. at 642 n.2 (quoting State v. Perez, 33 Wn. App. 258, 262, 654 P.2d 708 (1982)). Something more than a defendant's "bare allegation" is required to overcome this highly persuasive evidence of voluntariness. State v. Osborne, 102 Wn.2d 87, 97, 684 P.2d 683 (1984).

A plea of guilty is involuntary when the defendant has received affirmative misinformation about the sentencing consequences of the plea. See Buckman, 190 Wn.2d at 59. In State v. Buckman, the Supreme Court concluded that the defendant's guilty plea was involuntary because he was misinformed by defense counsel, the prosecutor, and the judge that he was facing life imprisonment if he

- 8 -

lost at trial when the actual maximum sentence he faced was 114 months imprisonment. Id. at 58. The State listed the erroneous maximum sentence on the plea statement and the court informed the defendant of the incorrect maximum during the plea colloquy. Id. at 57. The Supreme Court found that Buckman was "plainly misinformed" about the maximum sentence he faced at trial. Id. at 59.

Here, Haxton has not proven that he was affirmatively misinformed about the consequences of his guilty plea. He testified at the hearing on the motion that Quillian told him he faced a maximum sentence of over 20 years if he went to trial on all three counts. The record contained evidence that he had repeated this erroneous maximum range to a competency evaluator four months prior to the entry of the guilty plea. However, unlike Buckman, Haxton was not "plainly misinformed" of the maximum sentence he faced at trial by the court or the State. The plea statement that he signed did not include the maximum sentence if convicted on all three counts, but listed the correct sentencing range of 58.5 to 76.5 months under the amended information. Haxton specifically indicated to the court during the plea colloquy that he understood the sentencing range to be 58.5 to 76.5 months for the proposed resolution. The trial court was not convinced that Quillian had affirmatively misinformed Haxton of the sentencing consequences and noted that it had reason to question the credibility of Haxton's testimony. Haxton has not presented any more evidence than a "bare allegation" that he was misinformed, which is not sufficient to carry his burden under CrR 4.2(f).

B. Ineffective Assistance of Quillian

Haxton also argues that the affirmative misrepresentations about the consequences of his guilty plea constituted ineffective assistance of counsel such that a manifest injustice resulted. The test for ineffective assistance of counsel during the plea process is the same as that detailed in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In re Cross, 180 Wn.2d 664, 705, 327 P.3d 660 (2014), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018). A defendant must show both deficient performance by counsel and resulting prejudice in order to prevail on a claim of ineffective assistance of counsel. Strickland, 466 U.S. at 687. When alleging ineffective assistance of counsel "[i]n the context of a guilty plea, the defendant must show that counsel failed to substantially assist him in deciding whether to plead guilty and that but for counsel's failure to properly advise him, he would not have pleaded guilty." Cross, 180 Wn.2d at 705–06 (citing State v. McCollum, 88 Wn. App 977, 982, 947 P.2d 1235 (1997)). "Effective assistance of counsel includes assisting the defendant in making an informed decision as to whether to plead guilty or to proceed to trial." A.N.J., 168 Wn.2d at 111. Representation by counsel is presumed effective. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

Here, Haxton alleges that he was denied effective assistance of counsel because Quillian affirmatively misinformed him of the sentencing range he faced if convicted at trial. However, as noted above, he has not presented sufficient evidence that he was actually misinformed about the sentencing consequences.

- 10 -

Accordingly, he has not shown deficient performance by Quillian and his claim of ineffective assistance of counsel fails. Because Haxton was not able to show that withdrawal of his guilty plea was necessary to correct a manifest injustice, the trial court did not err in denying his motion.

II.    Ineffective Assistance of Griffin

In a statement of additional grounds, Haxton contends that his third defense attorney, Griffin, provided ineffective assistance by failing to introduce certain items at the evidentiary hearing on the motion to withdraw the plea. Specifically, Haxton contends that Griffin should have entered the report of his first competency evaluation and the transcript of a jail call between Haxton and his mother as exhibits in support of his motion.

As noted above, an appellant must show that counsel's performance was deficient and that he was prejudiced by this deficient performance. Strickland, 466 U.S. at 687. Again, there is a strong presumption that counsel's performance was not deficient. McFarland, 127 Wn.2d at 336. An appellant can rebut this presumption if there was no conceivable trial tactic explaining counsel's performance. State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

A. Competency Evaluation

Haxton first contends that Griffin should have introduced the report of his first competency evaluation to support his motion to withdraw the plea. In this report, the evaluator states that Haxton believed the possible penalty if he was convicted at trial of all three charges could be around 20 years. The report was created and filed with the court on February 15, 2017. Haxton entered the guilty

plea on June 5, 2017. The written motion to withdraw the plea submitted by Cabrera stated the defendant relied on the court file in support of the motion.

Because the report was in the file and the motion stated that it relied on the file for support, the court was free to consider the contents of the competency evaluation. Griffin's failure to specifically draw the court's attention to this document does not appear to rise to the level of deficient performance. Furthermore, Haxton cannot show that he was prejudiced by this decision. It seems unlikely that the court would have been swayed by evidence that Haxton had stated the erroneous sentencing range to the evaluator four months before he entered the guilty plea. This evidence does not provide proof that he was affirmatively misinformed of the accurate sentencing range. Therefore, Haxton's claim of ineffective assistance of counsel on this basis fails.

B. Call Transcript

Haxton also contends that Griffin was ineffective in failing to introduce the transcript of a recorded jail call between Haxton and his mother. The transcript of this call is not part of the record on review. Haxton states in his statement of additional grounds for review that he told his mother during this call that if he lost at trial he would be sentenced to 20 to 22 years. He says this call occurred before he entered the plea of guilty but does not give a specific date.

Similarly, Haxton cannot show that he was prejudiced by counsel's failure to offer this evidence as an exhibit in support of the motion to withdraw the plea. This transcript would not have proven that Quillian affirmatively misinformed Haxton of the correct sentencing range. The court would still have been left with

Haxton's bare allegations that he had been misinformed. Accordingly, Haxton's second ineffective assistance claim also fails.

We affirm.

WE CONCUR: