# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  59237-1-II |
| Respondent, | |
| v. | |
| JAMES HARRIS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — James Harris appeals his conviction for solicitation of possession with intent to deliver a controlled substance, arguing the superior court erred by denying his motion to withdraw his guilty plea.  We affirm.

## FACTS

In September 2023, Harris was arrested after a Clallam County Sheriff's Deputy observed Harris on a casino surveillance video sitting in a truck taking methamphetamine and fentanyl out of a bag.  In October 2023, the State charged Harris with possession with intent to deliver a controlled substance.  As part of the plea negotiations, the State amended the information to one count of solicitation of possession with intent to deliver a controlled substance.

In December 2023, Harris pleaded guilty to the amended information.  Harris pleaded guilty consistent with *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 269-70, 684 P.2d 712 (1984), which allows a defendant to plead guilty to a lesser charge that is not factually supported in order to take advantage of the State's plea offer as long as there is factual support for the original charge.

At the hearing on change of plea, the superior court engaged in an extensive colloquy with Harris. Harris stated that he had reviewed the plea with his defense counsel and understood all the rights he was giving up by pleading guilty, including the right to go to trial and have the state prove its case. The superior court also reviewed the consequences of the plea and the agreed sentencing recommendation with Harris. The superior court found that Harris understood the nature of the charges; the consequences of pleading guilty; there was a factual basis for the guilty plea; and Harris was making the plea knowingly, voluntarily, and intelligently. The superior court accepted Harris' guilty plea and set sentencing for January 10, 2024, to accommodate Harris' need to address some medical issues.

At the sentencing hearing, Harris' defense counsel informed the superior court that Harris wanted to withdraw his guilty plea and proceed to trial on the original charge. The superior court agreed to hear an oral motion from Harris' counsel.

In support of Harris' oral motion to withdraw the guilty plea, Harris' counsel explained that he had reviewed the original charges with Harris and then negotiated an *In re Barr* plea that allowed Harris to take advantage of the State's offer despite the amended charge not fitting the specific facts of the case. Defense counsel described, in detail, the circumstances leading up to the plea agreement:

> But the circumstances were is [sic] that, uh, Mr. Harris was with some friends, they were driving a U-Haul truck. The friends decided to stop at the casino and Mr. Harris is not allowed on the casino grounds and so he stayed in the truck in the casino parking lot. They went in.
> While they were in, a video camera caught him rummaging through his compatriot's or friends, um, where he took out some methamphetamine and I believe it was five fentanyl pills.
> The police were notified, Clallam County deputies arrived and they arrested him.

Um, one of the other gentleman at first said that the bag was his—his own, and then I believe it was two to five minutes later he came back and said no, it wasn't his.

So Mr. Harris was interviewed at the jail and he stated that the methamphetamine was taken for personal use. When he was asked, uh, about the fentanyl pills he denied that he was a fentanyl addict and said that he was going to sell them, the five fentanyl pills.

He was charged then with possession with intent to deliver. And then during the course of his incarceration he had physical problems . . . . And, uh, he asked if he could see his doctor, I said well, we need to get your medical records. All of this took time and as we were approaching the end of his time in jail before trial, I did get the medical records.

Now, in the medical records it showed that after the interview that night, he was interviewed by the jail nurse and, uh, he said that he was a methamphetamine addict as well as a fentanyl addict and that he was on fentanyl at that time, had taken fentanyl that night and a Suboxone prescription was submitted for him. And the nurse, as a precautionary measure, took his blood test—or blood sample, had it tested and he was full of fentanyl that night and in fact while he was being interviewed by the deputy where he denied that he was a fentanyl addict.

And so what happened was the offer had been made to the—by the State, not this offer by the way, but the offer that was later submitted. I went down and talked to Mr. Harris and said gosh, um, Jimmy, we've got a—kind of a great case going here, you've got a good defense, it shows that you not only lied to the deputy about maybe the fentanyl pills being for resale, but that you were not a fentanyl addict. And so I said I get it, you did this because you thought it was somehow going to benefit you not being a fentanyl addict and I said we've got a good case.

Well, we talked about the offer and we didn't want to go with that offer but Mr. Harris then authorized me to go and try to work out a better deal so I went upstairs and then I talked to [the prosecutor] and we worked out this, uh, amended charge of solicitation. I believe that's called a Barr, uh, plea, where it doesn't really fit the facts but in fact it affords an opportunity to Mr. Harris to accept the lesser charge and get a better deal while serving the ends of justice.

And so I got this and then I went back downstairs and I talked to Mr. Harris and we talked about the risks and so forth and at that time he authorized me to go ahead and do this so I contacted [the prosecutor], I said well, we've got a deal and then we came in and we pled guilty and—to that amended charge.

Verbatim Rep. of Proc. at 71-74. However, after discussing the case with his family, Harris informed defense counsel that he wanted to withdraw his guilty plea because he believed he was not guilty of the original charge.

3

The State objected to withdrawal of the plea because Harris had failed to establish a manifest injustice. The superior court set sentencing over one week to consider Harris' motion.

Before the continued hearing date, the superior court entered written findings of fact and conclusions of law on Harris' motion to withdraw his guilty plea. The superior court found that Harris had not made any assertion "that would qualify as a manifest injustice" and determined that "what has happened here is that the defendant has re-thought his position and now would like to try his chances at trial." Clerk's Papers at 46. The superior court concluded that Harris' plea was made knowingly, voluntarily, and intelligently and there was no basis to allow Harris to withdraw his plea. The superior court denied Harris' motion to withdraw his guilty plea.

The superior court imposed a standard range sentence of 15 months, consistent with the agreed recommendation in the plea agreement.

Harris appeals.

## ANALYSIS

Harris argues that the superior court erred by denying his motion to withdraw his guilty plea. We disagree.

We review the superior court's decision denying a pre-judgment motion to withdraw a guilty plea for an abuse of discretion. *State v. Horntvedt*, 29 Wn. App. 2d 589, 598, 539 P.3d 869 (2023); *State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010). Under CrR 4.2(f), the superior court "must permit a defendant to withdraw their plea in order to correct a 'manifest injustice.'" *Horntvedt*, 29 Wn. App. 2d at 598 (quoting CrR 4.2(f)). The defendant bears the burden of proving a manifest injustice. *Id*.

A manifest injustice is "'an injustice that is obvious, directly observable, overt, not obscure.'" *Id*. (internal quotation marks omitted) (quoting *State v. Saas*, 118 Wn.2d 37, 42, 820

P.2d 505 (1991)). "Four nonexclusive criteria exist for determining 'manifest injustice': '(1) denial of effective counsel, (2) plea . . . not ratified by the defendant or one authorized [by him] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.'" *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996) (alterations in original) (internal quotation marks omitted) (quoting *Saas*, 118 Wn.2d at 42).

Here, Harris failed to prove a manifest injustice that required the superior court to grant his motion to withdraw his guilty plea. Although Harris stated that, after discussing it with his family, he thought he was innocent of the original charges, Harris had discussed the strength of his case with defense counsel prior to deciding to accept the plea agreement. The superior court correctly recognized that changing his mind after discussing the case with family is not a basis for finding a manifest injustice, and Harris did not identify any grounds that would support a manifest injustice.[1] Instead, Harris established only that after further consideration and discussion with his family, he changed his mind about his guilty plea. Because Harris did not prove a manifest injustice, the superior court did not abuse its discretion in denying his motion to withdraw his guilty plea.

Accordingly, we affirm.

---

[1] To the extent that Harris attempts to characterize his plea as involuntary on appeal, this argument is misplaced. Harris is not appealing his guilty plea; rather, Harris is appealing the superior court's ruling denying his motion to withdraw his guilty plea. Therefore, the relevant question in this appeal is whether Harris met his burden to show a manifest injustice *in his motion to withdraw the guilty plea* in the superior court. Accordingly, we do not independently address whether Harris' guilty plea was involuntary on grounds not raised in the superior court.

No. 59237-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Veljacic, A.C.J.

_____
Price, J.

6