[No. 5149–4–II.   Division Two.   November 23, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. STACY
STEPETIN PEREZ, *Appellant.*

*Jack W. Hanemann, Jr.,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Richard A. Strophy, Senior Deputy,* for respondent.

WORSWICK, J.—Defendant Stacy Perez appeals an order of the Thurston County Superior Court denying her motion

to withdraw her guilty plea to the charge of manslaughter in the beating death of a small child. The significant issue presented is whether noncompliance with CrR 4.2(e), which requires a plea bargain agreement to be made a part of the record at the time the plea is entered, invalidates the plea. Defendant also challenges the trial court's finding concerning the substance of a plea bargain agreement, and contends that she was ineffectively assisted by counsel. We find no prejudicial error, and affirm. However, we hold that CrR 4.2(e) must be strictly complied with in the future.

Defendant was convicted of second degree murder after trial in 1975. She appealed, and we reversed the conviction and remanded the case for a new trial. (State v. Perez, cause 2757-2, unpublished opinion filed December 13, 1977). On April 9, 1979, she appeared in court to enter a plea of guilty to the amended charge of manslaughter. She read and signed a statement on plea of guilty substantially in the form required by CrR 4.2(g). Moreover, the court orally explained the rights she was giving up by pleading guilty and received her assurance that the plea was voluntary and not induced by any unspoken agreements. She did not provide a statement of the factual basis for the plea, but the deputy prosecutor recited a lengthy offer of proof, to which she acceded as a means of establishing a factual basis. *See State v. Newton,* 87 Wn.2d 363, 552 P.2d 682 (1976); *In re Taylor,* 31 Wn. App. 254, 640 P.2d 737 (1982); *In re Teems,* 28 Wn. App. 631, 626 P.2d 13 (1981). The court, having also explained the maximum sentence for the crime, then accepted the plea. The following month, after a presentence investigation, the court sentenced her to prison for a maximum term of 20 years.

In August 1979, defendant moved to withdraw her plea. She claimed that before the plea was entered, the deputy prosecutor had told her attorney that, if she pleaded guilty to manslaughter, she would promptly be considered for the intensive parole program by the Board of Prison Terms and Paroles; however, following arrival at the Purdy Treatment

Center for Women, she had learned that she was not eligible for intensive parole. The prosecutor did not in fact recommend intensive parole. Later, following a substitution of counsel, defendant filed an amended motion claiming that she agreed to plead guilty because her original lawyer told her that the prosecutor would recommend intensive parole to the parole board, and she believed that the sentencing judge would follow this lead and also so recommend. The prosecutor denied making such an agreement.

The Superior Court held hearings on the motions in September and in December 1979, and denied them. Defendant moved for reconsideration in August of 1980, submitting new affidavits by herself and one Angel Bracero, her brother–in–law, who was a mail carrier for the state agency mail system. These affidavits alleged that in early 1977 Mr. Bracero had encountered Mrs. Oberquell, then Chairman of the Board of Prison Terms and Paroles, had asked her about the case, and was told that she believed defendant could receive intensive parole.

Ultimately, on August 29, 1980, the Superior Court entered detailed findings and conclusions concerning withdrawal of the plea. The court found that the prosecutor and defendant's attorney agreed, as part of the plea bargain, that if the defendant were to be considered for intensive parole, the prosecutor would make no recommendation for or against it; that her attorney suggested intensive parole as a possibility, "and perhaps even a probability," but did not guarantee that she would qualify for it; and that neither her attorney, the prosecutor, nor the judge ever told defendant that the prosecutor or judge would recommend intensive parole. The court found no basis to permit withdrawal of the plea and again denied the motion.

We consider it useful, at the outset, to review fundamental principles having to do with the withdrawal of guilty pleas. CrR 4.2(d) prohibits trial court acceptance of a guilty plea that is not voluntary, *i.e.,* made voluntarily, competently, and with the defendant's understanding of the nature of the charges and the consequences of the plea.

*See, e.g., Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976). The rule provides further that there must be a factual basis for the plea and requires the trial judge to make sure the plea is voluntary. He must be sure the defendant reads and signs a statement on plea of guilty in substantially the form, and covering the many details, prescribed in CrR 4.2(g). We have previously suggested that the court should also personally interrogate the defendant concerning these matters. *See State v. Iredale,* 16 Wn. App. 53, 553 P.2d 1112 (1976). These strict requirements are designed to assure that guilty pleas will be voluntary, both under the rules of court and the constitution. *See Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). Once the safeguards of the rules have been employed, however, a defendant will be permitted to withdraw a plea only upon a showing that withdrawal is *necessary* to avoid a *manifest injustice. State v. Taylor,* 83 Wn.2d 594, 596, 521 P.2d 699 (1974).

Before discussing the plea bargain issue, we dispose summarily of defendant's attack on the trial court's finding as to what the bargain was. The court found that it simply was that the prosecutor would remain neutral if defendant were to be considered for intensive parole. This finding is supported by testimony, in the plea withdrawal hearings, of both the prosecutor and the defense attorney. Our independent examination of the record leads us to conclude that the trial court's finding should not be disturbed. *See State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980).

As for the undisclosed plea bargain agreement, the record of the plea hearing on April 9 shows that defendant disclaimed, both orally and in writing, the existence of any unstated promise or agreement. When a defendant fills out a written statement on plea of guilty in compliance with CrR 4.2(g) and acknowledges that he or she has read it and understands it and that its contents are true, the written statement provides prima facie verification of the plea's voluntariness. *In re Keene,* 95 Wn.2d 203, 206–07, 622 P.2d 360 (1980); *In re Teems, supra; State v. Ridgley,* 28 Wn.

App. 351, 623 P.2d 717 (1981). When the judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable. *See State v. Ridgley, supra; State v. Iredale, supra.* Here the judge inquired, in part, as follows:

> THE COURT: Now, have there been any other arrangements, agreements, or anything that might influence your change of plea other than the fact that the Second Amended Information alleges the charge of Manslaughter? Have there been any other agreements or arrangements?
>
> THE DEFENDANT: No.
>
> THE COURT: So that your plea here today would be free and voluntary and of your own volition, is that correct?
>
> THE DEFENDANT: Yes.

Now, it turns out, there was an undisclosed agreement. The question is what to do about this plain violation of CrR 4.2(e).

■ In this case, we find no basis for allowing withdrawal of the plea. The agreement was only that *if* defendant was considered for intensive parole, the prosecutor would make no recommendation for or against. The plea was not induced so much by this agreement, but by the misplaced hope of eligibility for intensive parole. The prosecutor's promise was conditioned upon an event—intensive parole eligibility—that never came to fruition. The prosecutor's promised obligation never materialized.

However, we are not inclined to stop there. The language of CrR 4.2(e) is clear: *any* plea bargain must be spread on the record at the plea hearing. The criminal rules were not made to be broken or ignored. As the United States Supreme Court noted in consideration of the federal counterpart of CrR 4.2:

> [T]he Rule [Fed. R. Crim. P. 11] is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more

expeditious disposition of, the numerous and often frivolous post–conviction attacks on the constitutional validity of guilty pleas.

*McCarthy v. United States,* 394 U.S. 459, 465, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). Our Supreme Court, citing *McCarthy,* noted the salutary effect of strict compliance with the rule, stating:

> We agree with the Supreme Court that such a result will "help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate." *McCarthy v. United States, supra* at 472. The slight burden imposed on trial judges by these requirements is more than outweighed by the benefits noted above, particularly in light of the enormous role guilty pleas play in our criminal justice system[;]

and went on to hold, prospectively, that noncompliance with CrR 4.2(d) would be grounds ipso facto for setting a guilty plea aside. *Wood v. Morris,* 87 Wn.2d at 511–12.

We believe that the sound administration of justice requires such construction and application of CrR 4.2(e). Therefore, we now hold that, with regard to pleas taken after publication of this opinion, failure to comply with CrR 4.2(e), standing alone, will be grounds for withdrawal of a plea.[1] Compliance with the rule is, of course, the responsibility of the attorneys and particularly of the prosecutor, who has an interest in obtaining a secure plea. No judge can make an agreement part of the record if it is not disclosed.

■ Finally, defendant contends that her plea was involuntary because she was denied effective assistance of coun-

---

[1]We note, as possibly contra, *State v. Ridgley, supra,* in which Division One of this court took the position that an alleged "technical" violation of CrR 4.2—there, that the trial court failed to determine that Ridgley understood the nature of the charge—does not require vacation of the plea unless the accused can show prejudice resulting from the violation. *See also State v. Majors,* 24 Wn. App. 481, 483 n.1, 603 P.2d 1273 (1979); *Jones v. United States,* 423 F.2d 252 (9th Cir. 1970) (violation of similar Fed. R. Crim. P. 11).

sel. This is so, she claims, because her former attorney allegedly misinformed her that she was eligible for intensive parole, thereby inducing her to plead guilty. We find no merit in this contention. In summary, the record indicates that counsel told defendant there was a probability that she would receive intensive parole, but that he could not guarantee it. Although he was optimistic about defendant's eligibility for the program, she knew—both from what her lawyer told her and what she read on her statement form and heard in court—that she was going to prison for a time, that the Board of Prison Terms and Paroles would set a minimum term, and that intensive parole was possible but not certain. She was aware of the possible consequences of her plea. In fact, the supervisor of the intensive parole program, Mr. Stanley, testified that defendant was not automatically excluded from the program because the crime was manslaughter, and that he personally considered the details of her case before deciding that she did not qualify. We are not persuaded that counsel's optimism, which was based upon considerable investigation of intensive parole policies, was so significantly erroneous as to be outside the range of competence required of attorneys representing criminal defendants. *State v. Butler,* 17 Wn. App. 666, 564 P.2d 828 (1977).

Affirmed.

PETRICH, A.C.J., and PETRIE, J., concur.