

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72854-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SANGTACHAN FONG, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 21, 2016 |

SCHINDLER, J. — Sangtachan Fong filed a motion to withdraw his guilty plea to one count of rape in the first degree. Fong claimed his guilty plea was involuntary because he did not have an interpreter during the plea proceedings. Following an evidentiary hearing, the trial court rejected Fong's testimony as not credible and denied the motion. Because Fong failed to demonstrate withdrawal of the guilty plea was necessary to correct a manifest injustice, we affirm.

## FACTS

On November 28, 2012, the State of Washington charged Sangtachan Fong with one count of rape in the first degree domestic violence and one count of attempted rape of a child in the third degree domestic violence. The State alleged Fong entered the bedroom of his 17-year-old stepdaughter, placed a handgun on the pillow next to her

head, and forcibly raped her. The State also alleged Fong attempted to rape the stepdaughter when she was 14 years old.

After the charges were filed, Fong fled. Fong was arrested in Texas and waived extradition. After Fong returned to King County, his family hired attorney David Gehrke to represent Fong.

On March 27, 2013, Fong entered a guilty plea to one count of rape in the first degree domestic violence. Under the terms of the plea agreement, the State dismissed the count of attempted rape of a child in the third degree domestic violence.

At the beginning of the lengthy plea colloquy, the deputy prosecutor questioned Fong about his ability to review the "Statement of Defendant on Plea of Guilty to Felony Sex Offense" with his attorney.

> [PROSECUTOR]: Is it also accurate that you have an eleventh-grade education?
> DEFENDANT FONG: Yes.
> [PROSECUTOR]: I have in front of me, and you're welcome to share with me, a document that is called "Statement of Defendant on Plea of Guilty." Have you had the opportunity to go over this document in depth with your attorney, Mr. Gehrke?
> DEFENDANT FONG: Yes. He did last week.
> [PROSECUTOR]: Okay. And did you read the document yourself, or did he read it to you, or a combination of the two?
> DEFENDANT FONG: He read it to me.
> [PROSECUTOR]: Did you have any problems understanding him when he read this document to you?
> DEFENDANT FONG: No, no.
> [PROSECUTOR]: Do you have any problems understanding the English language at all?
> DEFENDANT FONG: No, no.

The deputy prosecutor then described the nature of the charge, the standard range and maximum sentences, the State's recommended sentence, the fact that the trial court was not bound by the parties' recommendations when imposing sentence, the

nature of the indeterminate sentence, legal financial obligations, and numerous other conditions of sentence and consequences of entering into a guilty plea, including the requirement to register as a sex offender. Fong repeatedly acknowledged he understood the conditions of sentence and the consequences of pleading guilty.

During the course of the colloquy, Fong initialed various portions of the Statement of Defendant on Plea of Guilty. At one point, Fong identified his initials on the plea statement. When advised the guilty plea "can be grounds for deportation or exclusion from admission to the United States" if he was not a United States citizen, Fong responded, "I understand." Finally, Fong acknowledged no one had threatened him or made any other promises to persuade him to sign the plea agreement. Fong affirmed he had no further questions.

Fong's attorney David Gehrke informed the court he had reviewed discovery with Fong and Fong's family and Fong had discussed the plea with his family. Gehrke told the court he was confident Fong was making a knowing, voluntary, and intelligent decision to plead guilty. The trial court confirmed with Fong the decision to plead guilty was his own and he had all the time he needed to talk with Gehrke.

When the deputy prosecutor asked Fong whether he remembered the specific rights he was giving up when pleading guilty, Fong responded, "Guilty." At this point, the trial court intervened. Fong acknowledged his attorney told him he was waiving the right to a speedy and public trial by an impartial jury. But Fong replied, "I don't remember" when asked if he recalled the other specific rights he was waiving. The court emphasized to Fong how important it was that he understand the rights he was giving up. Gehrke then reviewed with Fong on the record the specific rights he was

3

waiving, including the right to remain silent, right to testify and present witnesses, and the right to cross-examine witnesses. Fong acknowledged he understood the rights.

After confirming Fong understood his rights and had no further questions, the trial court accepted Fong's guilty plea as knowing, intelligent, and voluntary. On August 2, 2013, the court sentenced Fong to an indeterminate standard-range sentence of 123 months to life imprisonment.

On August 1, 2014, the attorney who was representing Fong in a subsequent prosecution for child molestation filed a motion to withdraw Fong's guilty plea to the November 28, 2012 charge of rape. Fong did not submit a declaration in support of the motion. His attorney alleged Fong's first language was Mien and he had trouble understanding English. The attorney claimed that because Fong did not have a Mien interpreter during plea negotiations, he "did not understand the ramifications of his guilty plea, the rights that he was waiving, or, even, the fact that he was pleading guilty."

The trial court conducted an evidentiary hearing on the motion to withdraw the guilty plea in December 2014. Fong's attorney for the 2012 charges, David Gehrke, testified he spent 10 to 12 hours discussing the case with Fong before entry of the guilty plea. Gehrke said that during their discussions, Fong spoke in full sentences, asked clarifying and appropriate questions, and seemed to comprehend the answers. During the course of the discussions, Gehrke never thought Fong needed an interpreter. Nor did Fong or any family member ever suggest Fong needed an interpreter. Gehrke testified that he would have arranged for an interpreter if he ever thought Fong needed one.

Gehrke stated Fong never said he wanted to go to trial. Rather, he indicated he wanted to plead guilty because of the strength of the State's evidence and to avoid a five-year firearm enhancement. Because Fong was not a citizen, Gehrke told him the rape charges "would be an aggravated felony . . . and that I didn't see any way to make this immigration-safe and that it could be very adverse in terms of citizenship and could affect his ability to stay here." When asked if Fong understood he would be deported, Gehrke explained:

> I made it clear to him, and I'm confident he understood, that a plea to this would have negative consequences.
> I'm not sure that I told him he would definitely be deported. I told him that he had serious issues there, and I also told him that if he had further questions, he could talk to an immigration attorney.

Community Corrections Officer (CCO) John Pioli spent nearly two hours interviewing Fong in April 2013 for the court-ordered presentence investigation (PSI). CCO Pioli testified that Fong did not ask for an interpreter and CCO Pioli did not think Fong needed one.

> It was a very pleasant interview. [Fong] was very cooperative. He answered every question I asked of him. He gave me a lot of detail regarding his early life before he came to the United States. He gave me a lot of information about when he was here in the United States. He talked to me about his past relationships, a little bit about his children, his work history and education history.
> He was very cooperative. It was a very good interview.

Fong spoke in English to CCO Pioli, spoke in complete sentences, gave appropriate answers, and asked for clarification if he did not understand the question. CCO Pioli testified Fong provided all of the information attributed to him in CCO Pioli's lengthy PSI report in English.

Fong's younger brother Naichiew Saechao testified he and Fong were born in Laos and came to the United States in 1990. Fong's native language is Mien and he had only a minimal introduction to the English language before arriving in the United States. After arriving in the United States, Fong enrolled in high school but dropped out after about a year and a half. After leaving school, Fong worked at a series of jobs where many of his coworkers spoke Mien.

According to Saechao, Fong speaks "some" English and "reads a little bit" of English. Saechao never expressed any concern to Fong's attorney about Fong's ability to understand English. Saechao believed Fong would have asked for help if he needed it.

Fong testified through an interpreter. Fong described his ability to read and write English as minimal at best. He identified "eat," "water," and "shower" as the only English words he knew.

Fong explained he wanted to withdraw his guilty plea because he did not understand "anything written" on the Statement of Defendant on Plea of Guilty. Fong claimed he met with Gehrke for no more than three hours before entering the plea, "didn't understand a word" his attorney explained about the plea statement, and repeatedly told Gehrke he did not understand. Fong also asserted he twice asked Gehrke for an interpreter and Gehrke never provided one.

Fong was unable to recall any significant details about what he said during the plea colloquy or during the interview with CCO Pioli. Fong insisted he did not know he could tell the judge he did not understand the plea statement. Fong said he eventually

6

signed the plea documents only because his attorney told him to do so. Fong claimed he did not even know he had pleaded guilty until he went to jail after the plea hearing.

The trial court denied the motion to withdraw the guilty plea, finding "[t]here was no credible evidence to support [Fong]'s claim that his plea was not knowing, voluntary and intelligently made." The court noted Fong's statements during the plea colloquy, the extensive details Fong provided to CCO Pioli during the PSI interview, and the credible testimony of Fong's attorney Gehrke all flatly contradicted Fong's claim that he understands only a few words of English.

Fong appeals.

## ANALYSIS

Fong contends the trial court erred in denying his motion to withdraw his guilty plea. He argues the evidence was insufficient to establish a knowing, intelligent, and voluntary guilty plea. Fong also argues that his attorney provided constitutionally deficient assistance of counsel during the plea process. Fong separately contends the trial court's failure to appoint a Mien interpreter during the guilty plea proceedings violated his right to due process. Fong's due process argument rests on the factual claim that he needed an interpreter to understand the plea process. Because the court necessarily considered and rejected this claim following the evidentiary hearing, our review is limited to the order denying Fong's motion to withdraw his guilty plea.

Under CrR 4.2(f), the court must permit the defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." This is a "demanding standard" and requires the defendant to demonstrate " 'an injustice that is obvious, directly observable, overt, not obscure.' " State v. Branch, 129

Wn.2d 635, 641, 919 P.2d 1228 (1996) (quoting State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)). An involuntary guilty plea and denial of effective assistance of counsel during the plea process may constitute a manifest injustice. State v. Taylor, 83 Wn.2d 594, 597, 521 P.2d 699 (1974). We review the trial court's denial of Fong's motion to withdraw his guilty plea for an abuse of discretion. State v. Olmsted, 70 Wn.2d 116, 118, 422 P.2d 312 (1966). To prevail on appeal, Fong must demonstrate the trial court exercised its discretion "upon grounds clearly untenable or manifestly unreasonable." Olmsted, 70 Wn.2d at 119.

Fong asserts his guilty plea was not knowing, intelligent, and voluntary because he was unable to understand the plea proceedings without a Mien interpreter. The record does not support his assertion.

Fong's signature on the written Statement of Defendant on Plea of Guilty in compliance with CrR 4.2(g), and the acknowledgment that his attorney read the statement to him and he understands it, provides " 'prima facie verification of the plea's voluntariness.' " Branch, 129 Wn.2d at 642 n.2 (quoting State v. Perez, 33 Wn. App. 258, 261, 654 P.2d 708 (1982)). Where, as here, the trial court then conducts an extensive colloquy establishing "the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." Perez, 33 Wn. App. at 262.

Fong's responses during the plea colloquy strongly support the determination of voluntariness. The record shows Fong was able to respond in complete sentences, ask questions, and seek clarification when necessary. Contrary to Fong's assertion on appeal, Fong did not claim during the plea colloquy that he was unable to read the Statement of Defendant on Plea of Guilty. Rather, Fong told the court his attorney read

the plea statement to him. As the trial court noted, Fong provided an answer in a complete sentence in response to the deputy prosecutor's compound question.

The trial court also considered extensive testimony from Gehrke, the attorney who represented Fong, and CCO Pioli, who interviewed Fong for the PSI shortly after the plea hearing. Gehrke spent 10 to 12 hours with Fong and never believed Fong needed the assistance of an interpreter. Gehrke testified that Fong answered his questions appropriately and in complete sentences, and neither Fong nor his family ever indicated Fong needed an interpreter.

CCO Pioli interviewed Fong for nearly two hours. Fong provided CCO Pioli with extensive and detailed information about his life, education, relationships, and work history. Fong gave appropriate answers to questions, spoke in complete English sentences, and never indicated the need for an interpreter.

Fong insisted he knew only approximately three words in English. Fong claimed he did not understand anything on the written plea statement, did not understand any of his attorney's explanations, did not understand anything at the plea hearing, and did not even understand he was pleading guilty. Fong also claimed Gehrke ignored his requests for an interpreter. The trial court rejected Fong's conclusory allegations as not credible. We defer to the trial court on credibility. See State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992) (appellate court defers to trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence).

Substantial evidence supports the trial court's finding that Fong failed to present any credible evidence that his guilty plea was not knowing, intelligent, and voluntary.

Because Fong failed to demonstrate a manifest injustice, the trial court did not abuse its discretion in denying Fong's motion to withdraw his guilty plea.

Fong also contends he should be permitted to withdraw his guilty plea because he was denied effective assistance of counsel. Fong argues Gehrke's advice about the immigration consequences of his guilty plea was inadequate.

We review claims of ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Fong bears the burden of demonstrating both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The scope of counsel's duty to advise a client about the immigration consequences of a guilty plea depends on the immigration law applicable to the specific circumstances of the case. See State v. Sandoval, 171 Wn.2d 163, 249 P.3d 1015 (2011); Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

Gehrke testified he advised Fong the offense was an aggravated felony, there was no way to make the plea "immigration-safe," and the plea could have "very adverse" consequences. On appeal, Fong asserts that he learned of the "immigration consequences" of his plea "[a]t some point after his conviction." But Fong does not provide a citation to the record to support his assertion or otherwise explain the specific immigration consequences. Nor does Fong provide any support for the allegation that he "would not have taken a guilty plea and risked deportation, had he understood the risks to his refugee immigration status."

Fong did not raise his claim of ineffective assistance in the motion to withdraw his guilty plea or allege counsel's immigration advice was constitutionally deficient under

the circumstances. Fong did not mention the immigration advice or consequences in his testimony. Rather, he flatly denied understanding anything during the plea proceeding, a claim the trial court rejected as not credible.

Based on the record before us, Fong fails to demonstrate that counsel's performance was constitutionally deficient or that Fong was prejudiced by inadequate advice on immigration consequences.

Affirmed.

WE CONCUR: