**FILED**
**AUGUST 31, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37257-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN MITCHELL VELIZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Steven Veliz was granted leave to pursue a late appeal of his 2012 conviction for forgery based on a guilty plea. He fails to demonstrate a basis for relief. His judgment and sentence are affirmed.

FACTS AND PROCEDURAL BACKGROUND

In early 2012, the State charged Steven Veliz with one count of forgery for cashing two checks drawn on his grandmother's checking account, knowing them to be forged. Later that year, he reached a plea agreement with the State. The statement on plea of guilty that Mr. Veliz signed (hereafter, the "plea agreement") stated, in part, "**In Considering the Consequences of My Guilty Plea, I Understand That:** . . . The prosecuting attorney will make the following recommendation to the judge: 30 days in jail, standard costs. No objection to work crew." Clerk's Papers (CP) at 5, 7. The plea agreement included a prominent paragraph beginning on its first page that read, "**I**

No. 37257-0-III
*State v. Veliz*


**Understand I Have the Following Important Rights, and I Give Them Up by**

**Pleading Guilty:**

(a)     The right to a speedy and public trial by an impartial jury in the county where the crime was allegedly committed;

(b)     The right to remain silent before and during trial, and the right to refuse to testify against myself;

(c)     The right at trial to hear and question the witnesses who testify against me;

(d)     The right at trial to testify and to have witnesses testify for me. These witnesses can be made to appear at no expense to me;

(e)     The right to be presumed innocent unless the State proves the charge beyond a reasonable doubt or I enter a plea of guilty;

(f)     The right to appeal a finding of guilt after a trial.

CP at 4-5.  Immediately above Mr. Veliz's signature, the plea agreement says:

My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and the "Offender Registration" Attachment, if applicable.  I understand them all.  I have been given a copy of this "Statement of Defendant on Plea of Guilty."  I have no further questions to ask the judge.

CP at 12.

Mr. Veliz's plea agreement included the following handwritten description of

what made him guilty of the crime:

11.     The judge has asked me to state what I did in my own words that makes me guilty of this crime. This is my statement: On 12·16-11, in Benton County, I did write a check on my grandmother's account without her permission and pass it as an accurate & true instrument

CP at 11.

2

No. 37257-0-III
*State v. Veliz*

Mr. Veliz's plea was accepted by the court on December 6, 2012. Toward the beginning of the morning docket, Mr. Veliz was present with other defendants when the trial court provided the following advisement of rights:

> THE COURT: I'm going take this opportunity to advise the individuals before the Court of their rights. So would all of the defendants in courtroom please stand and remain standing. Going to do this as a group so that we don't have to do it individually. Gets real tedious and get tired of hearing it. So if you're a defendant, please stand and remain standing.
> I want to advise each of you that you have the right to be represented by an attorney.
> . . . .
> Want to advise each of you that you have the right to be represented by an attorney. If you can't afford an attorney, the Court will assign an attorney to represent you.
> You have the right to a jury trial in Benton County in a timely manner.
> You have the right to remain silent before and during trial. You are not required to testify against yourself.
> You have the right to hear and question any witness who testifies against you.
> You have the right at trial to testify if you choose and to call witnesses on your own behalf at no expense to you.
> You are presumed innocent of the charges, unless the prosecutor proves the charge beyond a reasonable doubt or you enter a plea of guilty.
> If you elect to go to trial and are found guilty, you have the right to appeal. Go ahead and be seated. Thank you for standing.

Report of Proceedings (RP) at 10-11.

Later that morning, when the trial court considered Mr. Veliz's plea (it was identified as number 12 on the docket), Mr. Veliz appeared with attorney Craig Stilwill, evidently a colleague of Daniel Arnold, who was Mr. Veliz's court-appointed lawyer.

3

After confirming Mr. Veliz's identity and obtaining his date of birth, the trial court

engaged in the following exchange with Mr. Veliz:

>THE COURT: Have you had a chance to go over the written statement on plea of guilty, either with Mr. Arnold or Mr. Stilwill?
>
>MR. VELIZ: Yes, I have, on [sic] your Honor.
>
>THE COURT: Did you sign that document freely and voluntarily?
>
>MR. VELIZ: Yes, I have.
>
>THE COURT: Do you have any questions about the content of the document?
>
>MR. VELIZ: No, sir.
>
>THE COURT: Do you understand that when you plead guilty to forgery you face a maximum of five years in prison and $10,000 fine?
>
>MR. VELIZ: Yes, sir.
>
>THE COURT: And in your case the standard range is zero to 60 days in jail. When I went over the rights this morning were you here?
>
>MR. VELIZ: Yes, I was.
>
>THE COURT: Do you recognize that when you plead guilty you waive the rights related to trial, because there won't be a trial?
>
>MR. VELIZ: Yes, your Honor.
>
>THE COURT: How do you plead to the charge of forgery?
>
>MR. VELIZ: Guilty.
>
>THE COURT: Your statement indicates that, "On December 16th of 2011 in Benton County I did write a check on my grandmother's account without her permission and passed it on as approved and true—as an accurate and true instrument." Is that true?
>
>MR. VELIZ: Yes.
>
>THE COURT: The Court will accept the plea.

RP at 2-3.

4

No. 37257-0-III
*State v. Veliz*

The trial court proceeded immediately to sentencing. A statement by Mr. Stilwill that Mr. Veliz was authorized at one time to prepare checks for his grandmother caused the trial court to ask for clarification, and Mr. Veliz told the court:

> MR. VELIZ: There was a history that went back for six years where I've wrote checks, and she had written me checks. And there was a family dispute basically, how I used to have a record, and my sister took the opportunity to throw me under the bus, and basically she filled out an affidavit and with the court and with the police department, and the majority of it was false, but I think that—it was drug induced. I was using drugs at the time, and I got carried away. Right now I'm in treatment and going to Summerset a few days a week since August 14th. Trying to get better. Succeeding so far, but I think that the best route is to accept this guilty plea 'cause at the time I don't remember if I did have authorization. But prior I did, and there was a history, and I'll just go ahead and sign this today and make my plea of guilty.

RP at 4-5.

The prosecutor disagreed with this characterization of events based on her own conversations with Mr. Veliz's grandmother and sister. She asked the trial court to incorporate the affidavit of probable cause as an additional basis for Mr. Veliz's plea, expressing concern that his verbal explanation "[s]ounds more like an *Alford*[1] plea at this point than just a regular straight guilty plea." RP at 5. Mr. Veliz did not object. The trial court stated it would incorporate the affidavit as a basis for the plea and would accept the plea. RP at 5.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

5

The trial court imposed the recommended 30 days and went along with Mr. Veliz's request that he be allowed to serve the time on work crew. It did not inquire into Mr. Veliz's ability to pay costs and no objection was made when they were imposed. Instead, the following discussion took place:

> THE COURT: . . . [Y]ou're expected to pay the court costs and fines and restitution immediately or go to the clerk and set up monthly payments and make those. Will you do that?
>
> MR. VELIZ: Yes, your Honor.
>
> THE COURT: All right. So when you get out, you're going to have to get yourself a steady job and make payments. Will you do that?
>
> MR. VELIZ: Yes, your Honor.

RP at 6. Mr. Veliz was ordered to pay a $500 victim assessment, a $500 fine, a $100 deoxyribonucleic acid collection fee, and other court costs. No timely appeal was filed. The record on appeal contains no evidence of Mr. Veliz's financial situation in December 2012.

Seven years later, in December 2019, Mr. Veliz filed a notice of appeal. He filed a motion and declaration for an order to proceed in forma pauperis on the same day, which was granted by the trial court. Counsel was appointed for the appeal and moved this court to extend the time allowed to file a notice of appeal. *See* Mot. to Enlarge Time to File Notice of Appeal, *State v. Veliz*, No. 37257-0-III (Feb. 27, 2020) (on file with court). The motion was supported by a declaration of Mr. Veliz's appellate lawyer stating that she had spoken with Mr. Arnold, and

> Mr. Arnold can no longer recall whether he advised Mr. Veliz of his right to appeal his conviction; however he states it was unlikely that he did, as he believes Mr. Veliz had no right to appeal, since he was sentenced within the standard range.

*Id.*, App. B at 1. The declaration further stated, "No witness can state with certainty that Mr. Veliz was advised of his right to appeal his conviction." *Id.*, App. B at 2. A declaration of Mr. Veliz was also filed, but adds nothing.[2]

The State opposed the motion on the basis that there was no affidavit from Mr. Arnold and no transcript of the superior court proceedings. Our commissioner granted the motion, however, on the basis that the statement of defendant on plea of guilty form used for Mr. Veliz's plea informed him he was giving up any right to appeal from a finding of guilt after trial without explaining that he had other, narrow appeal rights. Upon the granting of the motion, appointed counsel filed an opening brief that makes two assignments of error.

---

[2] The declaration appears to be in a form prepared by counsel that includes a space for the defendant to explain the circumstances resulting in the late filing of a notice of appeal. Mr. Veliz provides the following explanation:

```
warrant of commitment & mis representation of council  & no
AOC certified interperer for the hearing impaird
The question is whether the warrant of commitment sent& sentence
is a cconstitutuional
```

*Id.*, App. A at 1.

7

ANALYSIS

I.    MR. VELIZ DOES NOT DEMONSTRATE THAT HIS GUILTY PLEA WAS INVALID

Mr. Veliz's first assignment of error is that the trial court erred by accepting an

invalid guilty plea.  He frames the issue as follows:

> Due process requires a guilty plea be entered knowingly, intelligently, and
> voluntarily.  If a defendant has been misadvised about the consequences of
> a guilty plea, the resulting plea is not entered knowingly, intelligently, and
> voluntarily.  Mr. Veliz was not properly advised about his right to a jury
> trial, his right to testify, his right to remain silent, his right to present
> witnesses, or any of the many constitutional rights guaranteed him, nor did
> the record contain a factual basis for his plea.

Br. of Appellant at 1-2.

*Requirement that a plea be knowing and voluntary*

Due process requires a guilty plea to be made voluntarily and intelligently.  *Boykin*

*v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v.*

*Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018).  "A plea is knowing and voluntary

only when the person pleading guilty understands the plea's consequences, including

possible sentencing consequences."  *Buckman*, 190 Wn.2d at 59.  "[T]he record of the

plea hearing must affirmatively disclose a guilty plea was made intelligently and

voluntarily, with an understanding of the full consequences of such a plea."  *Wood v.*

*Morris*, 87 Wn.2d 501, 503, 554 P.2d 1032 (1976).  The State must make a clear and

convincing showing that the plea was voluntary and intelligent.  *Id.* at 507.  "Whether a

plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996).

Mr. Veliz's first assignment of error is based on a misconception that the only advisement of rights he received verbally was when the trial court dealt with him one-on-one and accepted his plea. He argues:

> The court simply asked Mr. Veliz, *presumably referring to earlier and unrelated cases on the court docket*, "When I went over the rights this morning, were you here?" RP 2-3. The court did not ask whether Mr. Veliz was listening to the earlier proceedings, or whether he understood *the questions posed by the court to other litigants.* The record lacks any indication that *the court conducted the waiver of constitutional rights properly in the morning cases—much less that the court's morning colloquy was relevant to Mr. Veliz's case.*

Br. of Appellant at 7 (emphasis added). While Mr. Veliz did not obtain a transcript of those earlier proceedings, the State did, so we have the transcribed advisement of rights that the trial court provided to the defendants as a group early in the morning docket. Mr. Veliz affirmed he was present when the court went over those rights.

The plea agreement lists all the rights Mr. Veliz waives should he plead guilty. Mr. Veliz signed the plea agreement, acknowledging he read it with his attorney and understood it. His signed and acknowledged plea agreement is prima facie verification of the plea's voluntariness. *State v. Perez*, 33 Wn. App. 258, 261, 654 P.2d 708 (1982). He verbally affirmed to the trial court that he went over the plea agreement with his attorney, signed the agreement freely and voluntarily, and had no further questions about it. *See*

9

*Perez*, 33 Wn. App. at 262 ("When the judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well-nigh irrefutable."). Mr. Stilwill also signed the plea agreement to attest, "I have read and discussed this statement with the defendant. I believe that the defendant is competent and fully understands the statement." CP at 12.

Mr. Veliz sometimes seems to confuse (1) what he needed to know about how pleading guilty would narrow his appeal rights in order to enter a knowing guilty plea, and (2) what he needed to know about his narrowed right to appeal for our commissioner to reject his late appeal. He wrongly characterizes this court's commissioner as having already determined "that the trial court did not inform Mr. Veliz of his constitutional right to appeal a finding of guilt; nor did defense counsel." Br. of Appellant at 8. That was not the issue that concerned our commissioner in deciding whether to permit a late appeal.

Rather, our commissioner's concern was whether Mr. Veliz failed to timely appeal because he had been misled to believe that defendants who plead guilty have *no* right to appeal. The statement on plea of guilty form formerly in use properly disclosed to defendants that by pleading guilty they were giving up their right to appeal a finding of guilt after a trial, but without making clear that they had a limited right to appeal other

matters.[3]  In an appropriate case, our commissioners have given offenders the benefit of the doubt that they were thereby deterred from exercising their right to appeal.

Our commissioner did not determine that the trial court failed to inform Mr. Veliz that defendants who go to trial have a constitutional right to appeal a finding of guilt.  It is clear from the complete record that the trial court did inform Mr. Veliz of that right.  It is clear that the same information was contained in the plea statement signed by Mr. Veliz.  The record on appeal reveals that required disclosures were made, and Mr. Veliz does not point to any evidence of misrepresentation by others or confusion on his part.

Taking into consideration the totality of the circumstances, Mr. Veliz's plea of guilty was voluntary and intelligent.

Requirement of a sufficient factual basis for a plea

CrR 4.2(d) requires that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."  This requirement protects defendants who are in the position of voluntarily pleading guilty with an understanding of the nature of the charge, but who do not realize that their conduct does not actually fall within the charge.  *In re Pers. Restraint of Crabtree*, 141 Wn.2d 577, 585, 9 P.3d 814 (2000).

---

[3] The current form prominently states, "In Considering the Consequences of My Guilty Plea, I Understand That: (a) My right to appeal is limited."  *See* Form CrR 4.2(g) at 2 (07/2021) (boldface omitted) (available at https://www.courts.wa.gov/forms /documents/CrR4.2_g_Non-Sex%20Offense_07%202021.pdf).

11

A factual basis for a plea exists if there is sufficient evidence for a jury to conclude that the defendant is guilty. *State v. Saas*, 118 Wn.2d 37, 43, 820 P.2d 505 (1991) (citing *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976)). Mr. Veliz's signed plea statement provided the following as "[his] statement," "in [his] own words":

> On 12-16-11, in Benton County, I did write a check on my grandmother's account without her permission and pass it as an accurate & true instrument.

CP at 11. The trial court read this statement to Mr. Veliz and asked him if it was true, and Mr. Veliz responded that it was.

Mr. Veliz would have us apply a heightened "factual basis" requirement on the premise that he entered an *Alford* plea. Asked how he pleaded to the charge of forgery, however, he answered, "Guilty." RP at 3. His lawyer did not correct him or characterize the plea as an *Alford* plea. When the trial court agreed to consider the affidavit of probable cause as an additional basis for the guilty plea, it did not say it was treating the guilty plea as an *Alford* plea. Mr. Veliz provides no authority or reasoned argument why the prosecutor's statement that his statement at sentencing "sounds more like an *Alford* plea" can alter the character of his plea.

In any event, the trial court was presented with the "strong evidence of actual guilt" that Mr. Veliz argues is required to support an *Alford* plea. Br. of Appellant at 9 (citing *In re Pers. Restraint of Ness*, 70 Wn. App. 817, 824, 855 P.2d 1191 (1993)). In addition to Mr. Veliz's description of his crime in the plea agreement, the affidavit of

No. 37257-0-III
*State v. Veliz*

probable cause relies for probable cause on police reports that Mr. Veliz cashed two

checks drawn on his grandmother's account, and that his grandmother "did not write the

checks to the defendant and did not authorize anyone else to do so." CP at 3. This strong

evidence was not undercut by defense counsel's or Mr. Veliz's statements during

sentencing. Defense counsel recounted that Mr. Veliz said he wrote the checks after his

authorization had expired. In Mr. Veliz's rambling answer to the court's question about

authorization, he said, "I think that—it was drug induced. I was using drugs at the time

and I got carried away." RP at 4-5. A second later he said, "[A]t the time I don't

remember if I did have authorization"—whatever that means. RP at 5. The evidence of a

factual basis was sufficient.

II.     MR. VELIZ DOES NOT DEMONSTRATE A RIGHT TO RELIEF FROM LEGAL FINANCIAL
        OBLIGATIONS

Mr. Veliz's second assignment of error asks us to strike the legal financial

obligations (LFOs) imposed in his 2012 sentence and to order that he recover money

damages for payments made, on grounds that the trial court failed to inquire into his

ability to pay and that in 2019 he was found indigent for purposes of appeal. He relies

on, *e.g.*, *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), and *State v. Ramirez*, 191

Wn.2d 732, 426 P.3d 714 (2018).

The State protests that while our commissioner gave Mr. Veliz the benefit of the

doubt that he misapprehended his appeal rights in 2012, he should not be allowed to

13

bootstrap that accommodation in order to challenge LFOs that he doubtless would not have challenged years before *Blazina* and *Ramirez* were decided. The State argues that "[i]f the court allows an examination of the defendant's LFOs, it would allow defendants from the 1990s, 2000s, and early to mid-2010s a way around [*In re Pers. Restraint of*] *Flippo*, [187 Wn.2d 106, 385 P.3d 128 (2016),] and the clear holding of our Supreme Court that the *Blazina* decision is not retroactive." Br. of Resp't at 11. The State asks us to hold that a challenge to LFOs does not fall within the "gross miscarriage of justice" under RAP 18.8(b) that was contemplated by our commissioner's ruling granting the motion to extend time for appeal. Mr. Veliz does not respond to the argument.

The State's argument warrants consideration in another case, but we need not address it in this one. Mr. Veliz knew from his plea agreement that the State was going to request "standard costs" and he did not challenge the failure to inquire into his ability to pay in the trial court. *Blazina* holds that we need not entertain a challenge to the failure to inquire for the first time on appeal. 182 Wn.2d at 832-34.

While Mr. Veliz also argues that he is indigent and entitled to an order striking his LFOs on statutory grounds under *Ramirez*, the record on appeal contains literally no evidence that he was indigent at the time of his December 2012 sentencing as defined in RCW 10.101.010(3)(a) through (c). *Ramirez* recognizes that this type of indigence at the time of sentencing (not seven years later) is what must be shown for us to invalidate LFOs on appeal on the basis of 2018 amendments to LFO provisions. Assuming without

14

No. 37257-0-III
*State v. Veliz*

deciding that a challenge to discretionary LFOs on the basis of the 2018 LFO amendments falls within the scope of our commissioner's order authorizing Mr. Veliz's late appeal, he has not made the required showing.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.

15