# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57818-2-II |
| Respondent, | (Consolidated with 57830-1-II) |
| v. | |
| J. MICHAEL EDWARD HUTCHINS, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — J. Michael Edward Hutchins appeals his convictions for second degree burglary, first degree theft, theft of a motor vehicle, vehicular assault, and second degree trafficking in stolen property. Hutchins alleges that his guilty pleas were not voluntary. In a statement of additional grounds (SAG),[1] Hutchins also claims that the State breached the plea agreement. We disagree and affirm.

## FACTS

On June 17, 2021, the State charged Hutchins with first degree trafficking in stolen property for an offense committed on November 28, 2020 (cause number 21-1-01505-9). On January 28, 2022, the State charged Hutchins with second degree burglary, first degree theft, theft of a motor vehicle, and another count of second degree burglary (cause number 22-1-00311-3). While the charges were pending, Hutchins wrote a letter to the superior court and the prosecutor explaining that he had a long history of substance abuse that contributed to his offending and

---

[1] RAP 10.10.

No. 57818-2-II (consolidated with 57830-1-II)

stating, "Drug addiction is a serious illness I need help with." CP (No. 57830-1) at 8 (emphasis omitted). Hutchins noted that he also had a history of mental illness that was exacerbated by his drug use.

In July 2022, Hutchins participated in screening for a Drug Offender Sentencing Alternative (DOSA). Following the screening, Hutchins entered an agreement to plead guilty to amended charges of second degree trafficking stolen property, second degree burglary, first degree theft, theft of a motor vehicle, and vehicular assault. As part of the plea agreement, the State agreed to make the following recommendation in cause number 21-1-00311-3:

> 68 months in custody Counts 1 and 5; 57 months Count 2 and 3, all concurrent and concurrent 21-1-01505-9; 12 months community custody Count 5, State not opposed to Prison based DOSA of 59.5 months, (29.75 months in custody and 29.75 months DOSA treatment time on Counts 1 and 5); and 50 months (25 months in custody and 25 months DOSA treatment on Counts 2 &3) concurrent with 21-1-00311-3 [sic], $500 [Crime Victim Penalty Assessment (CVPA)]; Restitution by later court order; license Suspension per [Department of Licensing (DOL)] for Count 5 only.

CP (No. 57830-1-II) at 34-35 (boldface and underlining omitted). The State agreed to substantially the same recommendation in cause number 22-1-01505-9:

> 60 months in custody, State not opposed to Prison based DOSA of 55.5 months, (27.75 months in custody and 27.75 months DOSA treatment time), concurrent with 22-1-00311-3, $500 CVPA; Restitution by later court order.

CP (No. 57818-2-II) at 23 (boldface and underlining omitted). Hutchins signed a statement on plea of guilty in each case, which clearly stated that the superior court was not required to follow any sentencing recommendation.

2

At the hearing on Hutchins' change of plea, Hutchins' attorney told the court:

Your Honor, for the record, [I'm] here with Mr. Hutchins, who is seated to my left. We have received copies of the Amended Information in both matters and we waive the reading of both those documents.

We have also handed forward to the Court, the statements of defendant upon plea of guilty. I did review both of these documents, and by the way, we do have copies of both of these documents in front of us. I did review both of these documents with Mr. Hutchins earlier this afternoon. He indicates to me that he is 33 years of age, is a high school graduate. He understands that the charges that he has on the count—the case ending in 505-9, the trafficking in stolen property in the second degree, the case ending in 311-3, the burglary in the second degree, theft in the first degree, theft of motor vehicle, and the vehicular assault, disregard for safety of others.

I did review with Mr. Hutchins the constitutional rights of defendant on the bottom of page one, top of page two of this document. The Court will see his initials to the left of those constitutional rights.

I did review with Mr. Hutchins his offender scores, which basically are a nine plus for all of these offenses and the standard sentencing ranges. Mr. Hutchins indicated to me that he understood those specifically and the Court, I will note for the Court, that in the case that is the trafficking in stolen property, since it is a Class C felony, the range is 51 to 60 months. On the other matter, they're all four Class B felonies, with ranges of either 42 to 57 months, or 51 to 68 months.

I did review with Mr. Hutchins the prosecutor's recommendations, which are found on the bottom of page four and on one part of it, top of page five of both of these documents. I circled the paragraph that indicated that the Court doesn't have to follow his recommendations to sentence. Mr. Hutchins indicated that he understood that paragraph.

I reviewed paragraphs L, M, N, O, and P that deal with collateral issues, such as firearm rights and voting rights. The Court will see Mr. Hutchins' initials to the left of those.

There are paragraphs that are initialed on page seven and eight, and I believe page nine on one of these, dealing with the issues of DOSA sentencing community custody and on one case, the fact that his driver's license will be suspended or revoked.

> The Court will see that these are factual based pleas and I believe that they're fair and knowing pleas in these matters.

Verbatim Rep. of Proc. (VRP) at 4-6. The superior court then engaged in a colloquy directly with Hutchins. Hutchins confirmed to the superior court that he had read and gone over the statements on plea of guilty with his attorney.

The superior court next went through all of the rights that Hutchins gave up with a guilty plea, and Hutchins confirmed he understood the rights he was giving up. Hutchins also confirmed that he wanted to give up those rights and plead guilty.

The superior court also reviewed the maximum penalties that could be imposed for Hutchins' offenses and the standard ranges for Hutchins' offenses. Hutchins confirmed he understood the statutory maximums and his standard ranges. Hutchins also confirmed he understood the legal financial obligations and community custody that would be imposed.

The superior court also reviewed the specific sentencing recommendations that would be made in the case and confirmed that Hutchins understood them. The superior court clarified that the plea agreement was not for a joint sentencing recommendation:

> THE COURT: So, under the '21 case number, it's my understanding these are not joint recommendations, but you're just not opposing the defense arguing for a specific sentence?

> [THE STATE]: Correct. It's essentially a plead guilty as charged and they can ask for whatever they want and we're not agreeing in that.

VRP at 13. And the superior court confirmed that Hutchins understood other consequences of the guilty plea such as potential immigration consequences and loss of firearm and voting rights. Then the superior court specifically confirmed that Hutchins understood the terms of a DOSA if the superior court agreed to impose one.

4

Finally, the superior court specifically engaged in a colloquy with Hutchins regarding the factual basis for the plea agreement:

> THE COURT: On or about November 28th of 2020 in Pierce County, Washington, I did knowingly and unlawfully and recklessly traffic in property that had been previously stolen from Rodney [Syiss.]
>
> . . . .
>
> THE COURT: And is that your signature here on this document telling me that that—you're adopting that?
>
> MR. HUTCHINS: Yes sir.
>
> THE COURT: Is that a true statement?
>
> MR. HUTCHINS: Yes sir, Your Honor.
>
> THE COURT: All right. Now, let's turn to the '22 cause number. Under that same paragraph 11. It says on or about January 15th of 2020, all matters in Pierce County, Washington, I did unlawfully and feloniously, with the intent to commit a theft therein, enter unlawfully into a building, knowingly and unlawfully. That same day and at that same location, I stole items from the property with a value exceeding $5,000.00. On that same date and location I was with another individual who feloniously stole a motor vehicle and on or about January 27th of 2022, I did unlawfully and feloniously operate a motor vehicle with disregard for the safety of myself or others, crashed that vehicle, injuring another with substantial bodily harm, Savannah Armstrong. Is that your statement?
>
> MR. HUTCHINS: Yes, sir.
>
> . . . .
>
> THE COURT: And is that a true statement?
>
> MR. HUTCHINS: Yes sir, Your Honor.

VRP at 19-20. The superior court also confirmed with Hutchins that no one had threatened him or made promises to him regarding the plea.

5

After this extensive colloquy, the superior court accepted Hutchins' pleas of guilty to the amended informations.

The case immediately proceeded to sentencing. The State informed the superior court that it was recommending a high-end standard range sentence in both cases. The State outlined all the underlying facts of the crime and told the court:

> I get it. Mr. Hutchins sent me a letter personally from the jail begging for a DOSA recommendation. He's got a drug problem. He went through ACT. He's got a prior meth conviction that gets washed out. Drugs, no doubt, drugs fuel this whole thing.
>
> . . . .
>
> The State just, I—the State just believes he just—he just needs to go and do his time. He's a fairly young man. He can do his time. He'll get out. And maybe, he doesn't hang out with the likes of Mr. [Kohl] again, who knows.

VRP at 24-25. The State also told the superior court that the most time Hutchins had served on any charges up to this point was six months in jail.

Hutchins' counsel informed the superior court that Hutchins had already been screened for a DOSA by the Department of Corrections (DOC) and DOC found that Hutchins did qualify for a DOSA. Counsel argued the superior court should impose a DOSA:

> Mr. Hutchins did, early on in the case, once the '22 cause number came about, sent a letter to the prosecutor, and I believe it's in the court file that indicates that he's got a drug problem, that he needs, and he's got some mental health issues that he needs treatment and was asking for a DOSA. At that point in time, the conversation between [the State] and I turned to whether in fact it would be appropriate to have a DOSA in this case. And it was my understanding all along that the reality is is that Mr. Hutchins has a drug problem, needs DOSA. The DOSA would allow, not just Mr. Hutchins treatment, and certainly the fortunate part of it for is that if the Court gives him DOSA, then he would spend a shorter period of time in jail, even though the Court sentences him to mid-range. Because that's what the DOSA does. If he doesn't do the treatment, then he goes back and completes that, on part of it 55 and 1/2 months and the other part 59 and 1/2 months' time period. So, he would

6

have that time period. So, we believe that a DOSA sentence in this case would be more than appropriate.

VRP at 32. Counsel also argued that the other person Hutchins committed the property crimes with was the driving force behind the offenses and Hutchins went along because he was afraid. Counsel also spoke to Hutchins' mother, who "knew that [Hutchins] had some mental health issues, but that the drug issues were the underlying issues that he needs to deal with."[2] VRP at 34.

Hutchins then personally addressed the superior court:

Your Honor, my drug addiction took me down a dark and lonely road. My drug addiction has tooken [sic] me from my family, my job, my hobbies. My drug addiction has influenced my choices from ones that I'm proud of to ones that just are just embarrassing. My drug addiction has took me from my friends, and good friends, and has put me around an associate and made me associate with people that I feared, people that I have nothing in common with besides just being high, getting high. And I just—I just I would like to now respectfully ask the Court to consider my sincerity to change.

Your Honor, my mom just retired last week. She's pushing 70 years old. She's the hardest working person I know. (Indiscernible) this year. And the little one in there, she is so precious. And that all starts with me.

Your Honor, I—Your Honor, I'm not gonna lie to you. Your Honor, I had 15 months clean and I got—I got laid off on my birthday during Covid 19 and I relapsed. I lost a family member to Covid 19, 26 years old with two kids. And I had free time and I—I couldn't pull away.

This time when I go back to my home group, I'm gonna find a sponsor that will put me out of my—out of my comfort zone, cause that's what I need. I need a sponsor this time to tell me—to work the steps with me and to—and to just to open my mind and take me out of my comfort zone and really be sincere. That's what I want to do—do different this time, you know.

The feelings that come with spending time with family and working a full week and earning an honest living is priceless. Waking up and driving to work. I do have my driver's license. Besides this accident where I panicked, Your Honor, I have a clean driving record. Man, my cup of coffee in the morning and the radio

---

[2] Hutchins' mother also made a brief statement to the superior court at sentencing.

playing and the people speeding by me honking because I'm going the speed limit heading to work with my tool bags, Your Honor, man, that is—that's priceless to me.

Sobriety, spending time with family and earning a living is priceless and sobriety is the biggest common factor in both. And sobriety is my priority.

I've never been to prison. I'm a little nervous. But I know if use the courses and I take it seriously and I practice it and I can be that person. I can be that good example.

Your Honor, I—I let detectives know off [sic]—day one I seen this stuff and I couldn't believe it. My heart melted. And I was with a buddy and we immediately called Crime Stoppers. And I let the detectives know that from day one. I immediately called, they said oh yep, that's the guy. She said it. And I locked myself inside because I was scared, Your Honor. I promise to you this is the truth and it's from the bottom of my heart. And now I got family support, I got job opportunities. I got ties to an AA home group. But most of all, Your Honor, I got the want and desire to just stay clean. And I'm on all the proper or—all the parties here today know, that's from the bottom of my heart. It's a no brainer for me.

I've got some mental health issues, Your Honor. I've been diagnosed, I've been through Greater Lakes, I've been through Outside In. And when I'm on my medications, significantly help. I've let Mr. Franz know this, I've let—in the letter I wrote to Mr. Jones, which I did on my own. I wanted to give this guy or man a chance to know me, not just know this. And I—and I—I want to get back on my mental health medications. It all starts with staying clean. And I—I can guarantee you, if I was not getting high or did not relapse, Your Honor, I wouldn't be sitting in front of you today. Thank you.

VRP at 38-40.

Following the arguments and presentations, the superior court decided not to impose a

DOSA:

It's apparent to this Court that your attorney worked hard for you and set you up to have the most success that you possibly could have. But I think you stated to me that it's the want and desire of you that's gonna make the difference. And I hope that's true. I hope that you live up to that.

I don't find that the use of the DOSA sentencing provision is appropriate in this case. I don't feel that it is a frugal use of the State and local government's resources.

I think, as your mother stated, there is consequences to actions. And I don't know that you have ever experienced those consequences for the severity of the actions that you have done.

VRP at 42. The superior court imposed high-end standard range sentences in both cases, with all sentences to run concurrently for a total of 68 months' confinement.

After the superior court made its decision and imposed the sentence, the following exchange took place:

MR. HUTCHINS: Can we take this back, Your Honor? I—I feel like my mental health was not in the right state and I wish I could be on my medication—

THE COURT: Mr. Hutchins? Mr. Hutchins, that's something that you can speak [with your attorney] about. But that's not what's before me today. Okay?

MR. HUTCHINS: I feel like if I would have had a mental health evaluation and could have been on medications, I could have made a better decision on what was going on. I got a long history of mental health from Greater Lakes, Outside In. I mean—

VRP at 47.

Hutchins appeals.

## ANALYSIS

Hutchins argues that his guilty plea was not knowing, voluntary, and intelligent because of his mental illness and drug addiction.[3] In his SAG, Hutchins also claims that the State breached the plea agreement. We affirm.

---

[3] Hutchins also makes this same claim in his SAG. We do not address this aspect of the SAG claim separately.

I. GUILTY PLEA

Hutchins argues his guilty plea was not knowing, voluntary, and intelligent because of his mental illness and drug addiction. Specifically, Hutchins argues the superior court failed to determine whether Hutchins' mental illness and withdrawal from drugs prevented him from being able to understand the nature of the charges against him. We disagree.

" 'Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily.' " *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018) (quoting *State v. A.N.J.*, 168 Wn.2d 91, 117, 225 P.3d 956 (2010)). "A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences." *Id.* " '[A] guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence of the plea, regardless of whether the actual sentencing range is lower or higher than anticipated.' " *Id.* (alteration in original) (quoting *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006)).

"When a defendant fills out a written statement on plea of guilty in compliance with CrR 4.2(g) and acknowledges that he or she has read it and understands it and that its contents are true, the written statement provides prima facie verification of the plea's voluntariness." *State v. Perez*, 33 Wn. App. 258, 261, 654 P.2d 708 (1982). "When the judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." *Id.* at 262.

Here, the record clearly belies Hutchins' assertion that the superior court failed to ascertain whether Hutchins understood the nature of the charges. Hutchins' counsel informed the court that he had reviewed all of the plea documents with Hutchins and represented that Hutchins understood them. The superior court also engaged in an extensive colloquy with Hutchins going through each aspect of the plea agreements, the factual bases for the plea agreements, and the consequences of the plea agreements creating a "well nigh irrefutable" presumption that Hutchins' plea was voluntary. *Id*. at 262. And although Hutchins' mental health and drug addiction were referenced by multiple people, there is nothing in the record demonstrating that either Hutchins' mental health or drug addiction were actually interfering with his ability to understand the charges against him. Moreover, Hutchins made an extensive allocution that gave no indication he was incapable of understanding his plea or the charges against him.

Nothing in the record before us supports Hutchins' argument that the superior court failed to ascertain whether his guilty plea was knowing or that Hutchins was unable to understand the charges. We affirm Hutchins' guilty plea.

## II. BREACH OF PLEA AGREEMENT

In his SAG, Hutchins also claims that the State breached the plea agreement. Specifically, Hutchins claims that, although the plea agreement stated that the State would not oppose a DOSA, the State actually opposed a DOSA by arguing for a standard range sentence. Hutchins' claim fails.

No. 57818-2-II (consolidated with 57830-1-II)

Plea agreements are contracts and due process requires the State to adhere to the terms of a plea agreement. *State v. Sledge*, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997). "A prosecutor is obliged to fulfill the State's duty under the plea agreement by making the promised sentencing recommendation." *Id*. at 840.

Here, the plea agreements stated that the State would make the following recommendations:

> 68 months in custody Counts 1 and 5; 57 months Count 2 and 3, all concurrent and concurrent with 21-1-01505-9; 12 months community custody Count 5, State not opposed to Prison based DOSA of 59.5 months, (29.75 months in custody and 29.75 months DOSA treatment time on Counts 1 and 5); and 50 months (25 months in custody and 25 months DOSA treatment on Counts 2 & 3) concurrent with 21-1-00311-3, $500 [Crime Victim Penalty Assessment (CVPA)]; Restitution by later court order; license Suspension per DOL for Count 5 only.

> [and]

> 60 months in custody, State not opposed to Prison based DOSA of 55.5 months, (27.75 months in custody and 27.75 months DOSA treatment time), concurrent with 22-1-00311-3, $500 CVPA; Restitution by later court order.

CP (No. 57830-1-II) at 34-35 (boldface and underlining omitted); CP (No. 57818-2-II) at 23 (boldface and underlining omitted). Both plea agreements clearly state that the State would not be joining a recommendation for a DOSA but would, instead, recommend standard range sentences. The State allowed Hutchins to argue for the DOSA and never argued why the DOSA *should not* be imposed. The State's actions throughout the sentencing hearing complied with the terms as stated in the plea agreement. Accordingly, Hutchins' claim that the State breached the plea agreement fails.

We affirm.

12

No. 57818-2-II (consolidated with 57830-1-II)

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

VEL ACIC, J.

13