IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>SHAKAIB KASHIFI,<br><br>                    Appellant. | No. 82712-0-I<br>(Consolidated with<br>No. 82885-1-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Shakaib Kashifi appeals his conviction on plea of guilty to domestic violence (DV) misdemeanor harassment. He, arguing his counsel was ineffective, contends the trial court erred in denying his motion to withdraw his guilty plea. Finding no error, we affirm.

FACTS

On September 21, 2020, Kashifi's wife S.A. called 911 and reported that he was "trying to take" her and their 2-year-old child. Responding police officers documented that S.A. "appeared very distraught and had been crying." S.A. told officers that she needed help leaving Kashifi because he had repeatedly threatened to kill her and their child. S.A. said she took these threats seriously because Kashifi is "not a normal person" and she believes he has a mental illness. When asked why she did not call 911 for the previous threats, S.A. explained that she kept hoping Kashifi would leave but he was controlling her phone and she needed help.

Citations and pin cites are based on the Westlaw online version of the cited material

Officers arrested Kashifi while he was walking down the road. Kashifi asserted that S.A. has "mental issues and is the one trying to kill him." During a follow-up interview with the detective assigned to the case, S.A. stated that Kashifi had "been threatening to kill her every other day for the last few months."

On September 23, 2020, the State charged Kashifi with DV felony harassment. Safa Peera was appointed to represent Kashifi. Two months later, Kashifi entered a plea of guilty to an amended charge of DV misdemeanor harassment.[1] Following a plea colloquy, the trial court accepted Kashifi's plea as knowing, intelligent, and voluntary. In his statement on plea of guilty, Kashifi said, "[B]etween July 15 and Sept 21, 2020, in King County, WA, I knowingly threatened to cause bodily harm to [S.A.] and my words put her in reasonable fear that the threat would be carried out. She is the mother of my daughter. My actions were taken without lawful authority."

Prior to sentencing, Kashifi retained new counsel and moved to withdraw his guilty plea based on ineffective assistance of counsel. Kashifi asserted that Peera had failed to investigate a potential diminished capacity defense, failed to interview police witnesses, and failed to provide or review complete discovery with him. In his supporting declaration, Kashifi claimed that he has "been diagnosed with mental health issues" and that he informed Peera about these issues but never met with a mental health evaluator in this case. Kashifi also indicated that he was not aware of and had not been provided "police reports, body worn video, 911 tape, or in car video." He stated that he "wished to have reviewed" those items before pleading guilty.

_____

[1] The parties stipulated that the facts set forth in the certification for determination of probable cause and the prosecutor's summary are real and material facts for purposes of sentencing.

2

An evidentiary hearing on Kashifi's motion took place on May 10, 2021. Peera testified that she advised Kashifi what a jury trial in a DV felony harassment case would entail. She explained that DV cases often present a "he said/she said scenario" where "it's just kind of one person's word against the other person." She further explained that the State has the burden to prove that the victim's fear was reasonable and that this would allow it to present evidence of prior incidents of DV. Regarding trial strategy, Peera spoke with Kashifi "about motive for [S.A.] to make any allegations that he had considered were fabricated and a lie." She reviewed the certificate for probable cause with Kashifi but did not go over the recorded 911 call or police videos with him.

Peera acknowledged that she "had some concerns regarding [Kashifi's] competency," particularly "his ability to track our conversations." Peera enlisted a social worker to help her determine whether this was "just either personality or just the way he presented versus actual competency concerns." After the social worker interviewed Kashifi, they concluded that "it was not a competency concern." Accordingly, Peera saw no reason to retain a mental health expert. She acknowledged that the certification for probable cause indicated that S.A. believed Kashifi suffered from mental health issues, but Peera did not "think there was any issue regarding his mental state at the time of the offense."

Peera testified that she spoke with S.A. by telephone to assess how S.A. felt about the case and that S.A. "was unsympathetic to Mr. Kashifi." Peera explained that she did not interview the officers who responded to S.A.'s 911 call or the detective assigned to the case because, in her experience, "interviewing police officers on a domestic violence case that has not occurred in view of the officers doesn't yield much"

3

at that stage of the case. Peera did not request an investigator because she "didn't think it was necessary at that time." Peera testified that when she first spoke to Kashifi he was "pretty adamant about wanting to go to trial." She focused on getting Kashifi out of custody pending trial but was unable to secure his release before the State offered to reduce the felony charge to a misdemeanor with sentencing conditions. Peera told Kashifi that she believed the plea conditions requiring DV treatment and mental health treatment were "onerous." But Kashifi wanted to get out of jail and he decided to accept the offer anyway.

The trial court denied Kashifi's motion to withdraw his guilty plea and entered written findings of fact and conclusions of law. The court then imposed an agreed recommended sentence. Kashifi appeals.

DISCUSSION

Kashifi argues that the trial court erred in denying his motion to withdraw his plea. Specifically, Kashifi asserts that counsel provided ineffective assistance by failing to (1) investigate a possible diminished capacity defense, (2) interview police witnesses, and (3) provide him with all discovery. We disagree.

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). A defendant is permitted to withdraw a guilty plea under CrR 4.2(f) "whenever it appears that the withdrawal is necessary to correct a manifest injustice." Pursuant to this demanding standard, the defendant must demonstrate "an injustice that is obvious, directly observable, overt, not obscure." State v. Branch, 129 Wn.2d 635, 641, 919 P.2d 1228 (1996) (quoting State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)). A defendant

4

may withdraw their guilty plea for manifest injustice if they received ineffective assistance of counsel. State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). If the defendant fails to establish either prong, we need not inquire further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). "While generally the trial judge's decision on whether to allow a defendant to withdraw a guilty plea is reviewed for abuse of discretion, '[b]ecause claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de novo.'" State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010) (quoting In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.2d 610 (2001). Additionally, where a trial court weighs evidence following a hearing, we review its findings of fact for substantial evidence and its conclusions of law de novo. State v. Schwab, 141 Wn. App. 85, 91, 167 P.3d 1225 (2007).[2]

We strongly presume counsel's performance was reasonable. In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). "In a plea bargaining context, 'effective assistance of counsel' merely requires that counsel 'actually and substantially [assist] his client in deciding whether to plead guilty.'" State v. Osborne, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (quoting State v. Cameron, 30 Wn. App. 229, 232, 633 P.2d 901 (1981)). To demonstrate prejudice, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he

---

[2] A conclusion of law erroneously described as a finding of fact is reviewed as a conclusion of law. Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

would not have pleaded guilty and would have insisted on going to trial.  State v. Buckman, 190 Wn.2d 51, 62, 409 P.3d 193 (2018).

Mental Health Defense

Kashifi argues that Peera's performance was deficient because she was aware that he had mental health issues yet failed to seek expert assistance or investigate a diminished capacity defense prior to advising him to plead guilty.[3]  Kashifi contends that Peera's failure to investigate meant that she was not in a position to determine whether there was a basis for a diminished capacity defense.

Effective representation includes reasonable investigation and, if necessary, expert assistance in developing an adequate defense.  State v. Lopez, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018).  "Where an attorney makes strategic choices 'after less than complete investigation,' however, a reviewing court will consider them reasonable only 'to the extent that reasonable professional judgments support the limitations on investigation.'"  State v. Fedoruk, 184 Wn. App. 866, 880-81, 339 P.3d 233 (2014).  The appropriate "degree and extent of investigation required will vary depending upon the issues and facts of each case."  A.N.J., 168 Wn.2d 91 at 111.

Here, Peera did not disregard the possibility that Kashifi had mental health issues.  She testified that she "had some concerns regarding [Kashifi's] competency," particularly "his ability to track our conversations."  Peera sought help from a social worker in her office to explore competency issues and formed the opinion that there was insufficient concern to hire a competency expert.  The trial court found that Peera "did

---

[3] To show diminished capacity, "a defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged."  State v. Atsbeha, 142 Wn.2d 904, 914, 16 P.3d 626 (2001).

not do what she thought was not necessary" with regard to hiring an expert to evaluate Kashifi for a mental health defense and that her decision did not justify withdrawal of the plea. Substantial evidence supports these findings, and the findings support the court's conclusion that Peera's representation was not deficient.

Kashifi relies on Fedoruk in support of his claim that Peera's failure to request a mental health evaluation was objectively unreasonable. In Fedoruk, the defendant had an extensive and well-documented history of serious mental illness, had previously been found not guilty by reason of insanity, and had been involuntarily committed. 184 Wn. App. at 885. Although this information was available to the defense from the beginning of the case, counsel did not seek to retain a mental health expert to evaluate Fedoruk until the day before jury selection. Id. at 882. The State argued that Fedoruk could not establish that he was legally insane, but conceded that he had a "legitimate basis to raise the defense" and that "it could change the outcome of the trial." Id. at 885. Under these circumstances, Fedoruk received ineffective assistance of counsel. Id. at 885.

In contrast, in the instant case, the only evidence of mental illness in the record is S.A.'s statement to responding officers that she "believes [Kashifi] has a mental illness" and Kashifi's self-serving assertion that he has "been diagnosed with mental health issues" and that he told Peera about these "specific mental health issues." Despite this claim, Kashifi has provided no evidence that he has ever been diagnosed with, or been treated for, any mental illness. We also note that Peera's testimony is inconsistent with Kashifi's assertion that he told her about his mental health issues and that the trial court was unwilling to infer from Kashifi's declaration that he has a mental health issue. We

7

defer to the trial court on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

The record does not show any actual evidence of mental illness that would make Peera's decision to not request a mental health evaluation fall below an objective standard of reasonableness. Given Kashifi's failure to provide evidence that he did in fact have a mental illness, he has not established a reasonable probability that further investigation would have yielded information that he would not have pleaded guilty and would have insisted on going to trial. This claim fails.

Witness Interviews

Kashifi next argues that counsel's performance fell below an objective standard of reasonableness because she failed to interview the responding officers and the investigating detective before he decided to plead guilty. He contends that, without interviewing the officers, Peera was not in a position to conclude they did not have evidence relevant to the defense.

An attorney has wide discretion in determining which witnesses to interview. In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 488, 965 P.2d 593 (1998). "[T]here is no absolute requirement that defense counsel interview witnesses before trial." Id. To obtain relief, the defendant "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." In re Pers. Restraint of Davis, 152 Wn.2d 647, 739, 101 P.3d 1 (2004).

Here, Peera testified that she "spent a lot of time" trying to get Kashifi out of custody pending trial. She explained that she chose not to interview the law

8

enforcement witnesses at that early stage because, in her extensive experience handling DV cases, "interviewing police officers on a domestic violence case that has not occurred in view of the officers doesn't yield much." The trial court properly concluded that Peera's investigation was sufficient under the circumstances and that she would have investigated more had Kashifi refused the plea offer.

Kashifi challenges the trial court's finding that "[l]aw enforcement officers would have only been able to testify as to what the victim reported to them." He argues that they could have provided useful testimony regarding the parties' appearance, credibility, and demeanor. But the officers' report already documented their personal observations of the parties, noting that S.A. "appeared very distraught and had been crying" and that Kashifi appeared "oddly calm." And, given that S.A. did not allege assault, the absence of physical injuries would not be exculpatory. It was not unreasonable for Peera to conclude that the testimony was not likely to have produced useful information. For the same reason, Kashifi has not shown that Peera's failure to conduct these interviews materially affected his decision to plead guilty.

Discovery

Lastly, Kashifi argues that Peera provided constitutionally ineffective assistance by failing to provide him with police reports, the recording of the 911 call, and police videos prior to pleading guilty. He contends that he could not make an informed decision about whether to plead guilty without being fully aware of this evidence. But Peera testified that she reviewed the police reports and certificate of probable cause with Kashifi and discussed what S.A. had alleged. The 911 call was summarized in the certificate of probable cause. And Kashifi's declaration does not specify whether or how

9

the electronic discovery items would have changed his decision to plead guilty. Given Peera's testimony and Kashifi's desire to get out of jail as soon as possible, the trial court's finding that it did not matter whether Kashifi reviewed those items was supported by substantial evidence. Kashifi has not shown that this information would have affected his decision to plead guilty.

## CONCLUSION

Kashifi has not met his burden to demonstrate that Peera's actions were objectively unreasonable or that her alleged errors would have changed his decision to plead guilty. The trial court did not err in denying the motion to withdraw his guilty plea.

Affirmed.

Coburn, J.

WE CONCUR: